**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

INTERNATIONAL PAINTERS AND ALLIED    )
   TRADES INDUSTRY PENSION FUND    )
GARY J. MEYERS, in his official capacity as    )
   a fiduciary,    )
1750 New York Avenue, N.W.    )
Washington, DC 20006-5387    )
    )
               Plaintiffs,    )   CIVIL ACTION NO.
       v.    )
    )
R.M. King Construction Company, Inc.    )
   d/b/a R.M. King Construction Co., Inc.    )
1535 Route 206    )
Tabernacle, NJ 08088    )
    )
               Defendant.    )

**COMPLAINT**

Plaintiffs, by undersigned counsel, complain as follows.

**JURISDICTION**

1.    This Court has jurisdiction over the subject matter of this action under 29 U.S.C.

§§1132, 1145; 29 U.S.C. §185(a); and/or 28 U.S.C. §1331. The claims asserted are all made

under federal statutes or federal common law, but the supplemental jurisdiction of the Court

under 28 U.S.C. §1367(a) also extends to any claims that are found to lie under state law.

2.    A copy of this Complaint is being served on the Secretary of Labor and the

Secretary of Treasury of the United States by certified mail in accordance with 29 U.S.C.

§1132(h) .

**VENUE**

3.    Venue lies in the District of Columbia under 29 U.S.C. §1132(e)(2), 29 U.S.C.

§185(a) and/or 28 U.S.C. §1391(b).

## PARTIES

4.      Plaintiff International Painters and Allied Trades Industry Pension Fund a/k/a

"Pension," International Union of Painters & Allied Trades Union Industry Pension Fund or

IUPAT Union and Industry Pension Fund ("Fund" or "Pension Fund") is a trust fund established

under 29 U.S.C. §186(c)(5). Its Trustees are the "named fiduciary," "plan administrator" and

"plan sponsor" and each is an individual "fiduciary," within the meaning of 29 U.S.C.

§§1102(a), 1002(16), (21), for the International Painters and Allied Trades Industry Pension

Plan, a/k/a IUPAT Union and Industry Pension Plan ("Pension Plan") and International Painters

and Allied Trades Industry Annuity Plan, a/k/a IUPAT Union and Industry Annuity Plan

("Annuity Plan"). The Pension Plan and Annuity Plan are each a "multiemployer plan,"

"employee benefit plan" and "employee benefit pension plan" within the meaning of 29 U.S.C.

§1002(37), (2) and (3). The Fund, Pension Plan and Annuity Plan maintain their principal place

of business and are administered from an office in this district at the address for the Fund in the

caption of this Complaint.

5.      Plaintiff, Gary J. Meyers ("Meyers" and, together with "Fund," "Plaintiffs") is a

fiduciary of the Funds within the meaning of 29 U.S.C. §1002(21) with respect to collection of

contributions due the Funds and related matters. He has a business address as listed in the

caption and is authorized to bring this action on behalf of all Trustees of the Fund and the Funds

as organizations.

6.      The Fund and Meyers are authorized collection fiduciary(ies) and agent(s) for:

        (a)      the Pension Plan,

        (b)      the Annuity Plan,

(c)    the Finishing Trades Institute, a/k/a National Apprentice Fund, "N-App," or International Joint Painting, Decorating & Drywall Apprenticeship and Manpower Training Fund ("FTI"), which is a trust fund established under 29 U.S.C. §186(c)(5) and "multiemployer plans" and "employee benefit plan" and "employee welfare benefit plan" within the meaning of 29 U.S.C. §1002(37), (1), and (3), and

(d)    the Painters and Allied Trades Labor Management Cooperation Initiative, a/k/a "LMCF," or The Painters and Allied Trades Labor-Management Cooperation Fund ("LMCI"), which is an entity that performs certain employer association functions, but is also an unincorporated organization established under 29 U.S.C. §186(c)(9).

7.    The FTI and LMCI are jointly or severally referenced as "Ancillary Funds" and maintain their principal place of business and are administered from an office in this district.

8.    The Fund and Meyers, in their capacity as authorized collection fiduciary(ies) and agent(s) sue on behalf of the Pension Plan, the Annuity Plan, the FTI and LMCI.

9.    The Fund, Pension Plan, Annuity Plan, FTI and, as allowed by law, LMCI, are jointly or severally referenced as the "ERISA Funds." The ERISA Funds and LMCI are hereinafter jointly or severally referenced as the "Funds."

10.    Defendant, R.M. King Construction Company, Inc., d/b/a R.M. King Construction Co., Inc. ("Company") is a New Jersey corporation and an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§152(2), (6) and (7), 1002(5), (11) and (12) with a business office at the address listed in the caption. The Company does business with the Fund that is sufficient to create personal jurisdiction over the Company in this district and a substantial part of the events or omissions giving rise to the claim occurred from transactions with the Funds' office(s) in this district.

## COMMON FACTS

11.    At all times relevant to this action, the Company was party to or agreed to abide by the terms and conditions of a collective bargaining agreement(s) (singly or jointly, "Labor Contracts") with one or more local labor unions or district councils affiliated with the International Union of Painters and Allied Trades, AFL-CIO, CLC (the locals, district councils and International being referred to jointly as "Union"). A true and correct copy of the cover page, table of contents, contribution provisions and joinder or signature page of the Labor Contract is attached as **Exhibit 1**.

12.    The Company also signed or agreed to abide by the terms of the Agreement and Declaration of Trust of the Fund ("Trust Agreement"), made between certain employers and employee representatives in an industry(ies) affecting interstate commerce to promote stable and peaceful labor relations, and the plan documents for the ERISA Funds. A true and correct copy of the Trust Agreement for the Fund is attached as **Exhibit 2**. True and correct copies of the cover page, table of contents §§10.07, 10.08, 10.11, and 10.12 and signature page of the Pension Plan are attached as **Exhibit 3**, and the Annuity Plan has parallel terms.

13.    Under the Labor Contracts, Trust Agreement, plan documents of the ERISA Funds or other documents, the Company agreed:

(a)    To make full and timely payment on a monthly basis to the Funds, as required by the Labor Contracts, Trust Agreement and plan documents. Ex. 2, p.15 (Art.VI, §2); Ex. 3, §10.07.

(b)    To file monthly remittance reports with the Funds detailing all employees or work for which contributions were required under the Labor Contract. Ex. 2, pp.15-16 (Art.VI, §§3, 5).

(c)    To produce, upon request by the Funds, all books and records deemed

necessary to conduct an audit of the Company's records concerning its obligations to the Funds

and to pay the cost of the audit if found to be delinquent or in violation of the Trust Agreement

or Plan. Ex. 2, pp.16-17 (Art.VI, § 6).

       (d)     To pay liquidated damages, late charges, interest, audit costs, and all costs of

litigation, including attorneys' fees, expended by the Funds to collect any amounts due as a

consequence of the Company's failure to comply with its contractual and statutory obligations

described in Subparagraphs (a), (b) and (c). Ex. 2, pp. 16-17 (Art.VI, §§4, 6); Ex. 3, §§10.07, 10.12.

     14.     All conditions precedent to this lawsuit or the relief it seeks have been satisfied.

## COUNT I - CONTRIBUTIONS UNDER ERISA - SUM CERTAIN

### PLAINTIFFS

#### v.

### COMPANY

     15.     The allegations of Paragraph 1 through 14 are incorporated by reference as if fully

restated.

     16.     Company has failed to pay to the ERISA Funds amounts due under the Labor

Contracts, Trust Agreements and Plan from March 2002 through October 2005 in at least the

sum of $11,535.68 based upon information presently available to the ERISA Funds in violation

of 29 U.S.C. §1145.

     17.     The ERISA Funds are adversely affected and damaged by the Company's

violation of 29 U.S.C. §1145.

     **WHEREFORE,** Plaintiffs ask that the Court:

     (1)     Enter judgment against Company in favor of the Plaintiffs, for the benefit of the

ERISA Funds, for at least the sum certain amount plus any additional amounts which may become

due during the pendency of this lawsuit together with late charges, interest at the rate(s) prescribed by 26 U.S.C. §6621 from the due date for payment until the date of actual payment, liquidated damages equal to the greater of the interest on the unpaid contributions or liquidated damages provided by the documents governing the ERISA Funds or statute, the cost of any audit and reasonable attorneys' fees and costs incurred in this action or the collection or enforcement of any judgment all as provided under the Trust Agreements, plan documents of the ERISA Funds, and 29 U.S.C. §1132(g)(2).

(2)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

**COUNT II - AUDIT**

**PLAINTIFFS**

**v.**

**COMPANY**

18.    The allegations of Paragraphs 1 through 14 are incorporated by reference as if fully restated.

19.    The amount of contributions the Company is required to pay to the Funds is based upon hours worked and paid to employees performing work covered by the Labor Contracts.

20.    The Funds are without sufficient information or knowledge to plead the precise nature, extent and amount of the Company's delinquency because the books, records and information necessary to determine this liability are in the exclusive possession, custody and control or knowledge of the Company.

21.    Computation of the precise amount of an employer's delinquency is best achieved by an audit of the employer's books and records to compare them to contractually-required remittance reports submitted by the employer.

22.    No audit of the Company's books and records has been performed.

23.    The Company is required by the Labor Contracts, Trust Agreements, plan documents of the ERISA Funds and/or applicable law to permit the Funds to audit its records, to cooperate in determining the contributions due the Funds and to pay the cost of the audit if found to be delinquent.

24.    The Funds and their fiduciaries or officers are adversely affected or damaged by the lack of an audit as, among other things, they have a duty to audit and confirm amounts due from contributing employers.

25.    The Funds and their fiduciaries or officers have no adequate remedy at law for lack of an audit as the calculation of any damages suffered as a result of the breach requires an audit.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)    Enjoin the Company, its officers, agents, servants, employees, attorneys and all others in active concert or participation with them to permit an audit of all records under the actual or constructive control of the Company and, in the absence of records, to cooperate in alternative methods for the determination of work for which contributions are due.

(2)    Order the Company to pay for an audit by a Certified Public Accountant chosen by the Funds, and

(3)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT III - CONTRIBUTIONS UNDER ERISA AFTER AUDIT

### PLAINTIFFS

v.

### COMPANY

26.    The allegations of Paragraphs 1 through 25 are incorporated by reference as if

fully restated.

27.    On information and belief, the Company has failed to make contributions to the ERISA Funds in violation of 29 U.S.C. §1145 in a period not barred by an applicable statute of limitations or similar bar.

28.    The ERISA Funds are adversely affected or damaged by the Company's violation of 29 U.S.C. §1145.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)    After an audit, enter judgment against the Company in favor of Plaintiffs, for the benefit of the Funds, for the contributions found due and owing by the audit, together with late charges, interest at the rate(s) prescribed by 26 U.S.C. §6621 from the due date for payment until the date of actual payment, liquidated damages equal to the greater of the interest on the unpaid contributions or liquidated damages provided by the plan document(s) or statute(s), the cost of the audit, and reasonable attorneys' fees and costs incurred in this action and in connection with any proceedings to enforce or collect any judgment all as provided under the Trust Agreements, Plan and 29 U.S.C. §1132(g)(2).

(2)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT IV - CONTRIBUTIONS UNDER CONTRACT - SUM CERTAIN

### PLAINTIFFS

#### v.

### COMPANY

29.    The allegations of Paragraphs 1 through 17 are incorporated by reference as if fully restated.

30.     The Company has not paid the Funds as required by the Labor Contract, and other documents incorporated by the Labor Contract, such as the Trust Agreements or plan documents of the ERISA Funds.

31.     Plaintiffs have been damaged as a proximate result of the breach of Labor Contract and/or its incorporated documents by Company.

**WHEREFORE,** Plaintiffs ask that the Court:

(1)     Enter judgment against the Company and in favor of Plaintiffs, for the benefit of the Funds, for the sum certain currently due plus any additional amounts which become due and owing during the pendency of this litigation or as a result of an audit together with liquidated damages, interest and costs, including reasonable attorneys' fees incurred in this action or the collection or enforcement of any judgment, as provided in the Labor Contract and Trust Agreements.

(2)     Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT V - CONTRIBUTIONS UNDER CONTRACT – AFTER AUDIT

### PLAINTIFFS

v.

### COMPANY

32.     The allegations of Paragraphs 1 through 31 are incorporated by reference as if fully restated.

33.     Plaintiffs are damaged as a proximate result of the breach of the Labor Contract and its incorporated documents by Company with respect to any amounts found due in an audit.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)    Enter judgment against the Company and in favor of Plaintiffs, for the benefit of the Funds, for the sum certain currently due plus any additional amounts which become due and owing during the pendency of this litigation or as a result of an audit together with liquidated damages, interest and costs, including reasonable attorneys' fees incurred in this action or the collection or enforcement of any judgment, as provided in the Labor Contract and Trust Agreements.

(2)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

KENT CPREK (Bar No. 478231)
DAWN M. COSTA
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0615/0616
Attorneys for Plaintiffs

Date:    5-14-08

*Application for Pro Hac Admission of Dawn M. Costa shall be made at the appropriate time.

**CIVIL COVER SHEET**

JS-44
(Rev. 2/01 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| International Painters and Allied Trades Industry Pension Fund, et al. | R.M. King Construction Company, Inc. d/b/a R.M. King Construction Co., Inc. |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: In land condemnation cases, use the location of the tract of land involved

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Kent Cprek, Esquire
Jennings Sigmond, P.C., The Penn Mutual Towers, 16th Floor,
510 Walnut Street, Phila., PA 19106
(215) 351-0615

ATTORNEYS (IF KNOWN)

---

**II BASIS OF JURISDICTION**
(SELECT ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

● 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity
(Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (SELECT ONE FOR PLAINTIFF AND ONE FOR DEFENDANT)
( FOR DIVERSITY CASES ONLY!)

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**
(Select one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. Antitrust | ○ B. Personal Injury/ Malpractice | ○ C. Administrative Agency Review | ○ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff))<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

---

| ○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil | | | |
|---|---|---|---|
| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant)<br>☐ 871 IRS-Third Party 26 USC 7609 | **Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act) |

| ○ G. Habeas Corpus/2255 | ○ H. Employment Discrimination | ○ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ◉ K. Labor/ERISA (non-employment) | ○ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

29 U.S.C. Section 185(a), 1132 and 1145 Action to collect unpaid contributions due under a collective bargaining agreement

| VII. REQUESTED IN COMPLAINT | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | DEMAND $ _____ | Select YES only if demanded in complaint<br>JURY DEMAND: ☐ YES ☒ NO |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY** (See instruction)   ☐ YES  ☒ NO   If yes, please complete related case form.

DATE  5/14/08   SIGNATURE OF ATTORNEY OF RECORD  _____

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# *Agreement*

BETWEEN

DISTRICT COUNCIL NO. 711
INTERNATIONAL UNION OF
PAINTERS AND ALLIED TRADES
STATE OF NEW JERSEY



AND

GARDEN STATE COUNCIL
PAINTING AND DECORATING CONTRACTORS
OF AMERICA
THE NEW JERSEY GLASS AND METAL CONTRACTORS
ASSOCIATION
THE DRYWALL AND INTERIOR SYSTEMS CONTRACTORS
ASSOCIATION, INC. OF NJ

EFFECTIVE MAY 1, 2000 THRU APRIL 30, 2006

EXHIBIT



## TABLE OF CONTENTS

| Article | | Page |
|---|---|---|
| 1 | Recognition | 1 |
| 2 | Jurisdiction | 3 |
| 3 | Union Security | 7 |
| 4 | Administrative Dues | 7 |
| 5 | Exclusive Hiring Hall | 7 |
| 6 | Wages and Schedules | 10 |
| 7 | Hours & Overtime | 27 |
| 8 | Contractual Relations and Obligations | 28 |
| 9 | Working Conditions | 30 |
| 10 | Fringe Benefit Funds | 31 |
| 11 | Cooperation and Advancement Funds | 33 |
| 12 | Political Action Fund | 34 |
| 13 | Joint Board | 35 |
| 14 | Union Representatives and Shop Stewards | 35 |
| 16 | Preservation of Work Clause | 36 |
| 17 | Joint Trade Board | 37 |
| 18 | Successor Clause | 39 |
| 19 | General Savings Clause | 40 |
| 20 | Duration Clause | 40 |

# AGREEMENT

This agree is between District Council No. 711, International Union of Painters and Allied Trades, hereinafter referred to as the "Union" and a coalition of the Garden State Council, Painting and Decorating Contractors of America (the "Council" hereinafter), the New Jersey Glass and Metal Contractors Association (the "Association" hereinafter) and the Drywall and Interior Systems Contractors Association, Inc. of NJ ("DISCA" hereinafter), hereinafter referred to as the "Coalition."

## ARTICLE 1
## RECOGNITION

1.1   The Coalition recognizes the Union as the exclusive bargaining agent for all employees doing work covered in the work jurisdiction defined in 2.2.

1.2   The Union recognizes the Coalition as the exclusive bargaining agent for all contractor employers.

1.3   (A)   The terms of employment, wages, hours of work and working conditions shall be maintained on a consistent basis for all employers and employees.

(B)   The parties agree that any employer member of the Coalition has the option to adopt or work under any other agreements, or terms or provisions thereof, which the Union has entered into with any other employer performing such work.

1.4   The terms of this agreement shall be binding upon the assigns and successors of the respective parties.

1.5   The employer agrees to register all jobs by mail/phone/fax to the Union main or local office in the area where the job is performed prior to starting any job. The original form shall be retained by the employer. Failure to comply is a violation of this agreement and is subject to an automatic $500.00 fine which must be paid to the Joint Trade Board before continuing work on said job.

1.6   All employers shall report to the Union the loss of any contract to a non-signatory contractor.

1.7   Any employer engaged in work outside the geographical jurisdiction of the Union shall:

1



    (A)   Employ not less than 50% of the employed on such work from the residents of the area where they work is performed or from among the persons who are employed the greater percentage of their time in such area; any others shall be employed from the contractor's home area.

    (B)   Comply with all lawful clauses of the collective bargaining agreement in effect in the other jurisdiction including, but not limited to, wages, hours of work, working conditions, fringe benefits, and procedure for settlement of grievances; provided, however, employees brought into an outside jurisdiction by employers shall be entitled to receive the wages, fringe benefits, and conditions effective in either the home or outside jurisdiction, whichever are more favorable to such employees.

   1.8   An employer shall not engage in work covered by the agreement through the use of device of another business or corporation which such an employer owns or controls through the use or device of a joint venture with another employer or contractor without first consulting with the Union to establish to the Union's satisfaction that the use of such device is not for the purpose of taking advantage of lower wages or conditions in effect in the area where said device is sought to be used. If the Union is not so satisfied, it may resort to all legal or economic recourse, including cancellation of this agreement with said employer, not withstanding any other provision of this agreement.

   1.9   An employer from another territorial jurisdiction who has work to be performed in the territory of District Council 711 and seeks persons to perform the work, shall employ persons from the registration list in the ratio of one (1) person from said list to one (1) person from other sources.

   1.10   Employees covered by this agreement have the right to respect any legal picket line validly established by a bona fide labor organization; the Union has the right to withdraw employees subject to this agreement if the employer is involved in a legitimate primary labor dispute with a bona fide labor organization.

    (A)   It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action, if any employee refuses to perform any service which his or her employer undertakes to perform for an employer or person whose employees are on strike, and which service, but for such strike, would be performed by the employees of the employer or person on strike.



1.11  (A)  It is stipulated and agreed that the below named officer is the authorized representative of the Union:

Patrick J. Brennan, Business Manager

(B)  It is stipulated and agreed that the below named officer is the authorized representative of the Coalition:

Clement V. Sommers, Chairman

(C)  In the event that either representative is no longer authorized by their respective organization, that party shall provide the other party with the name and address of the new authorized representative by registered letter, return receipt requested.

## ARTICLE 2
## JURISDICTION

2.1  The territorial jurisdiction of the Union includes the State of New Jersey.

2.2  The Union shall have jurisdiction over:

(A)  All painting of residences, buildings, structures, industrial plants, tanks, vats, pipes, vessels, bridges, light poles, high tension poles, traffic and parking lines on highways, parking lots, playgrounds, factories, and airline strips; all sign, pictorial, coach, car, automobile, carriage aircraft, machinery, ship and railroad equipment, mural and scenic painting, spackling of all surfaces where adhesive materials are used; and all drywall pointing, taping and finishing.

(B)  All decorators, paperhangers, hard wood finishers, grainers, glaziers, architectural metal and glass workers, varnishers, enamelers, gilders and drywall finishers.

1.  Paperhanger's work shall be all material of whatever kind of quality applied to walls or ceilings with paste or adhesive; all tacking on of muslin or other material which is used as wall or ceiling coverings or covered with material pasted on. Also includes the hanging of draperies, wall carpets and similar materials including associated clips, angles, hangers, etc.

2.  Whenever practical they shall have control over the scraping off of old paper, preparing of walls, etc. for paperhanging work.

3

3. The application of relief, stucco, plaster or decorative work shall not be considered paperhangers' work exclusively.

(C) All persons engaged in applying or removing paints, pigments, extenders, metal primers and metal pigments, clear pigments, binders, thinners and dryers, primers and sealers, oil paints and enamels, chemical and epoxy coatings, water colors and emulsions clear coatings, waxes, stains, mastics, cement enamels and other special coatings, plastics, adhesives, coating and sheet rubber and other linings, oils, varnishers, water colors, wall paper, wall coverings, decorative textures on all surfaces, foams, seamless and tile-like coatings or other materials used in the various branches of the trade, and the cleaning and beaching of all interior, and exterior walls and surfaces with liquid steam, sandblast, waterblast or any other process.

(D) Glaziers, Architectural Metal and Glass Workers: General Glazing will include, but not be limited to: (1) the installation, setting, cutting, preparing, fabricating, distributing, handling or removal of the following: art glass, prism glass, beveled glass, leaded glass, automotive glass, protection glass, plate glass, window glass, colored glass, figured glass, vitrolite glass, carrara glass, all types of opaque glass, glass chalk boards, structural glass, curtainwall systems, louvers, tempered and laminated glass, thiokol, neoprene, all types of insulating glass units, all plastics or other similar materials when used in place of glass to be set or glazed in its final resting place with or without putty, vinyl, molding, rubber, lead, sealants, silicone and all types of mastics in wood, iron, aluminum, sheet metal or vinyl sash, skylights, doors, frames, stone wall cases, show cases, book cases, sideboards, partitions and fixtures; (2) the installation of the above materials when in the shop or on the job site, either temporary or permanent, on or for any building in the course of repair, removal, alteration, retrofit or construction; (3) the installation and welding of all extruded, rolled or fabricated materials including, but not limited to, all metals, plastics and vinyls, or any materials that replace same, metal and vinyl tubes, mullions, metal facing materials, corrugated flat metals, aluminum panels, muntins, facia, trim moldings, porcelain panels, architectural porcelain, plastic panels, unitized panels, skylights, showcase doors, all handrails and relative materials, including those in any or all types of building related to store front, door/window construction and curtain wall

4



systems; (4) the installation of automatic door entrances, door(s) and window(s) frame assemblers such as patio sliding or fixed doors, vented or fixed windows, shower doors, bathtub enclosures, storm sash where the glass becomes an integral part of the finished product, including the maintenance of all of the above; (5) bevelers, silverers, scratch polishers, abrasive blasters, flat glass wheel cutting, mitre cutters, engravers, hole drilling, machine operations, belt machines, and all machines used in the processing of glass, automatic beveling, silvering, grinding, polishing, unpacking and racking of glass, packing glass, glass cleaners in shops, mirror cleaning, assembling, framing and fabrication and assembling of all insulated and non-insulated units, fabrication and mounting of mirrors and the operations of all machines and equipment for these operations; (6) the selecting, cutting, preparing, designing, art painting, and installing of fused glass, thick facet glass in concrete and cementing of art glass, and the assembly and installing or removal of all art glass, engraving, drafting, etching, embossing, designing, abrasive blasting, chipping, glass bending, glass mosaic workers, cutters of all flat and bent glass; glass shade workers, and glaziers in lead or other glass metals; the fabrication and distribution of all glass and glass-related products; (7) any and all transportation, handling, unloading and loading of tools, equipment and materials will be performed by members of this International Union.

(E)   Paint makers:
      All workers engaged in the mixing, testing, preparing, manufacturing and handling of lead, color, oil, lacquer, varnish and paint.

(F)   Sign and Display:
      1.   Sign painters' work shall be the making of signs and servicing of same, designing, lettering and pictorial work of any kind and the preparing for the finishing of same, be it by hand, brush, roller, spray, or by any other method or process of any material used as a background.

      2.   They shall have control of all branches, methods and processes of screen process work; tube bending; and display matter and its related operations used for advertising purposes, including all art work and lettering whether it is done by hand or by any other method or process pertaining to same. Their jurisdiction shall including the application of scotchlite or other adhesive



materials of a reflective nature used in the sign field for advertising or decorative purposes.

All operations involving cutting, bending, trimming and adhesion of plastic or other transparent, translucent or any other material used as a sign face background, also porcelain, enamel or force dried object when used for identification or advertising purposes and control of all sign handling, erecting and other necessary operation, pertaining to the same; theatrical and lobby displays, also all sketched whether made by pencil, ink, paints or by coloring material be it on hand or by any other method process.

(G)    Display Convention and Show Decorators:
This jurisdiction includes the installation and removal of all exhibits (floor to ceiling) and related materials in connection with trade shows and conventions, including, but not limited to: trade shows and convention booth assembly and disassembly; installation, removal, disassembly, and recrating of all commercial exhibits.

The construction, preparation, erection, and maintenance of all signs, lettering, pictorial work, screen process work, show card writing, commercial exhibits and fabrication of advertising displays and pattern and sketch making, scale model making, the preparation training aids and mockups and application of plastic, scotchlite and similar reflective materials.

(H)    Scenic Artists:
Scenic Artists' work shall consist of models, sketches, carpenter drawings, painting for theatrical productions, motion picture settings and all the various effects; the painting of properties and decorations which may be used to decorate the stage and motion picture settings, mural paintings, display creations and the art of makeup and all its various effects.

(I)    Tools and Equipment:
The operation of all tools, equipment and machinery used by all trades coming under our Union's jurisdiction including brushes, rollers, spray painting equipment, miscellaneous hand and power driven tools including sandblasting equipment, ladders, scaffolding and other rigging, the operations and maintenance of all types of compressors and hi-reaches.

(J)    The forgoing is not all-inclusive, and may be enlarged or otherwise changed by action of the General Executive Board in a manner not inconsistent with the express provisions of The Constitution of the Union and upon approval by the Coalition.



## ARTICLE 3
## UNION SECURITY

3.1    All present employees who are members of the Union of the Effective date of this agreement or on the date of execution of this agreement, whichever is the later, shall remain members of the Union in good standing as a condition of employment. All present employees who are not members of the Union and all employees who are hired hereafter shall become and remain members in good standing of the Union as a condition of employment on/or after the eighth (8th) day following the beginning of their employment, on and after the eighth day following the effective date of this agreement or on the date of execution of this agreement, whichever is later.

## ARTICLE 4
## ADMINISTRATIVE DUES

4.1:    Every employer signatory to this agreement hereby agrees to check-off from wages of any employee employed by such employer during the term of this agreement, administrative dues in the amount specified in the Union's bylaws and to remit said amount to the Union in the following manner:

(A)    The Union will notify the employer in writing of the amount of administrative dues specified in the bylaws, and will submit to the employer a copy of the bylaws or the applicable bylaw provision.

(B)    For each payroll period, the employer will deduct from the wages of each employee the amount specified in the bylaws based on the gross wages earned during said payroll period, and will accumulate said deductions to the end of the month.

## ARTICLE 5
## EXCLUSIVE HIRING HALL

The Union shall be the sole and exclusive source of referrals of applicants for employment as painters, tapers and glaziers.

The employer shall have the right to reject any applicant for employment.

The Union shall select and refer applicants for employment without dis-

7

crimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, or regulations, bylaws, constitutional provisions, or any other aspect or obligation of the Union membership policies or requirements. All such selection and referral shall be in accordance with the following procedure.

5.1    The Union shall establish and maintain an open and non-discriminatory referral system for the employment of journeymen and apprentice painters, tapers and glaziers.

5.2    The employer shall, upon requesting referral of job applicants, specify the following to the Union:

> (A)    Number of persons required
>
> (B)    Work or project location
>
> (C)    Type of work
>
> (D)    Individuals requested by name
>
> (E)    Specialty involved
>
> (F)    Any information to assist with proper referrals

5.3    The Union shall refer workers to the employer in the following manner and order:

> (A)    If available, specifically requested individuals previously employed by said employer may be recalled for a period of twelve (12) months from date of layoff.
>
> (B)    Those available whose names are entered on a seniority list, specialties included, posted and maintained by the Union.

5.4    The employer shall have entire freedom of selectivity in hiring and may reject, layoff or terminate any person referred to it by the Union.

> (A)    In the event the Union is unable to furnish qualified persons for employment, the employer may procure them from any other source or sources.

5.5    The selection of applicants for referrals shall be on a non-discriminatory basis. Seniority shall be based upon the length of employment in the

8

trade of jurisdiction and in a particular area commencing on the first day of employment. After unemployment in the trade or jurisdiction for a one (1) year period, seniority shall commence upon the subsequent employment date.

5.6 An employee who quits a job, except for medical necessity, or if fired for cause and terminated, may not be recalled by any other employer and shall assume the position at the bottom of the referral list and, seniority notwithstanding, shall remain there so long as any other qualified applicant seeks referral. An employee who quits or is fired for cause and is terminated a second time during the length of the agreement shall no longer qualify for referral.

5.7 Employer requests for general foreman or foreman shall be honored without regard to the out of work list.

5.8 (A) All employees must submit to an annual drug and alcohol test and will carry a card to certify testing and results thereof. The employer has a right to demand a valid drug test as a requisite to employment. The employer has the right to terminate employment upon non-compliance. After testing positive, the employee, at his expense, must certify that he is clean in writing to the Union.

(B) All active employees must complete a minimum of ten (10) hours of safety training annually, after work hours. The Education and Training Fund shall maintain each persons status. Members will be issued a card certifying that they have completed training.

(C) Employees will be encouraged to upgrade their skills at training seminars, after work hours, set up by the education and Training Fund, in cooperation with the employers.

5.9 No provision of this agreement shall be based upon or in any way affected by Union membership, bylaws, regulations, constitutional provisions or any other aspect or obligation of Union membership, policies, or requirements. Membership or non-membership in the Union shall not be considered in placing the name of any qualified person on the seniority records of the Union and shall not in any way affect the seniority accorded anyone.

5.10 A notice incorporating the terms and conditions relating to the hiring system shall be conspicuously posted at the Union's office.

9

## ARTICLE 6
## WAGES & SCHEDULES

6.1    Classification of Painters/Tapers Work:

(A)    New Construction of all kinds, except as described in (c).

(B)    Repainting, paperhanging work and preparation therefore on jobs where no major alterations occur, and where there are not more than three (3) other Union trades other than painters and allied trades present on that job, but excluding bridges, stacks, elevated tanks, and generating stations.

(C)    Painting/Taping of residences and apartment buildings up to three (3) stories in height.

In the event of a dispute, the Joint Trade Board shall determine the classification of the specific project.

6.2    Spraying, sandblasting, pneumatic and powertool (over 115V), work on tanks, stacks, open structural steel, cables, swing scaffolds, and exterior work over three (3) stories; work above thirty (30) feet from pole trucks, scissor lifts or other lifting devices shall be at the listed wage rates.

6.3    Glaziers Installation (Rack) Schedule:

(A)    One (1) man for door lights and similar sizes up to 42" x 84". Over this size shall be two (2) men.

(B)    This does not apply to steel or work sash of typical sizes and may be adjusted on prevailing rate projects.

(C)    On all plate glass:

| | | |
|---|---|---|
| Glass up to 170 united inches | Two | Men |
| Glass from 171 united inches to 191 united inches | Three | Men |
| Glass from 191 united inches to 221 united inches | Four | Men |
| Glass from 221 united inches to 240 united inches | Five | Men |
| Glass from 240 united inches to 250 united inches | Six | Men |
| Glass from 250 united inches to 260 united inches | Seven | Men |
| Glass from 260 united inches to 272 united inches | Eight | Men |
| Glass from 272 united inches to 284 united inches | Nine | Men |
| Glass from 284 united inches to 290 united inches | Ten | Men |
| Glass from 290 united inches to 305 united inches | Eleven | Men |
| Glass from 305 united inches to 312 united inches | Twelve | Men |

10

(D)  Rack schedule to be used as a guide for safety reasons. Job conditions and special circumstances shall be considered.

(E)  On 3/8 inch plate glass twenty five percent (25%) more men shall be used. On 1/2 inch plate glass fifty percent (50%) more men shall be used. On 3/4 inch plate glass one hundred percent (100%) more men shall be used. On larger glass, abnormal settings, etc. additional men shall be used for safety purposes. Special circumstances will be considered.

(F)  On insulating units, the total glass thickness shall determine the number of men by the above rack schedule. At least fifty percent (50%) more men shall be used on insulating units.

11

6.4   Painters, Glaziers & Tapers wage rates are as indicated on the following charts:

## PAINTERS

Wage for work classification A, as described: All New Construction except as described in 5.1 C

| Effective From | J | F | GF | Jsp | Fsp | GFsp | H & W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $28.50 | $31.35 | $32.75 | $31.00 | $33.85 | $35.70 | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/01 | $29.20 | $32.15 | $33.60 | $31.95 | $35.40 | $36.95 | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/02 | $29.90 | $32.90 | $34.40 | $32.80 | $36.20 | $37.85 | 14 | $3.60 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/03 | $30.60 | $33.65 | $35.20 | $33.65 | $37.05 | $38.75 | 14 | $3.90 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/04 | $31.30 | $34.45 | $36.00 | $34.45 | $37.90 | $39.65 | 14 | $4.20 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/05 | $32.05 | $35.25 | $36.85 | $35.25 | $38.80 | $40.55 | 14 | $4.50 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |

Abbreviations:

J-Journeyman Painter   F-Foreman Painter   GF-General Foreman   Jsp-Journeyman Spray   Fsp-Foreman Spray
H&W-Health & Welfare   App.-Apprentice   LMCF-Labor Management Contributions Fund   N-App-National Apprentice
Fund   IAF-Industry Advancement Fund   PAC-Political Action Committee

### Painters repaint

Wage for work classification B, as described: Repainting, paperhanging work and preparation therefore on jobs where no major alteration occur, and not more than three (3) other than painters and allied trades are present on the job site, but excluding bridges, stacks, elevated tanks, and generating stations.

| Effective From | J | F | GF | Jsp | Fsp | GFsp | H & W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $22.00 | $24.20 | $25.30 | $24.20 | $26.80 | $27.80 | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/01 | $22.50 | $24.75 | $25.85 | $24.75 | $27.20 | $28.45 | .14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |

*continued*

12

| Effective From | J | F | GF | Jsp | Fsp | GFsp | H & W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/02 | $23.00 | $25.85 | $26.45 | $25.30 | $27.85 | $29.10 | 14 | $3.60 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/03 | $23.50 | $24.75 | $27.05 | $25.85 | $28.45 | $29.75 | 14 | $3.90 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/04 | $24.00 | $27.20 | $27.60 | $26.40 | $29.05 | $30.40 | 14 | $4.20 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/05 | $24.55 | $28.45 | $28.25 | $27.00 | $29.70 | $31.05 | 14 | $4.50 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |

Abbreviations:
J-Journeyman Painter  F-Foreman Painter  GF-General Foreman  Jsp-Journeyman Spray  Fsp-Foreman Spray
H&W-Health & Welfare  App.-Apprentice  LMCF-Labor Management Contributions Fund  N-App-National Apprentice
Fund  IAF-Industry Advancement Fund  PAC-Political Action Committee

Painters C-Rate
Wage for work classification B, as described: New Residences and apartment building up to three (3) stories in height. Any repaint job which was last done by non-union forces. This includes repaint of all public buildings. Any other New Construction job having an open-shop general contractor, with prior written permission from the Union.

13

| Effective From | J | F | GF | Jsp | Fsp | GFsp | H & W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $18.00 | $19.80 | $20.70 | $19.60 | $21.50 | $22.55 | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/01 | $18.60 | $20.45 | $21.40 | $20.45 | $22.45 | $23.45 | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/02 | $19.20 | $21.15 | $22.10 | $21.15 | $23.25 | $24.30 | 14 | $3.60 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/03 | $19.50 | $21.75 | $22.80 | $21.75 | $23.85 | $25.05 | 14 | $3.90 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/04 | $20.40 | $22.45 | $23.50 | $22.45 | $24.70 | $25.80 | 14 | $4.20 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/05 | $21.45 | $23.60 | $24.70 | $23.60 | $25.95 | $27.15 | 14 | $4.50 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |

Abbreviations:
J-Journeyman Painter  F-Foreman Painter  GF-General Foreman  Jsp-Journeyman Spray  Fsp-Foreman Spray
H&W-Health & Welfare  App.-Apprentice  LMCF-Labor Management Contributions Fund  N-App-National Apprentice
Fund  IAF-Industry Advancement Fund  PAC-Political Action Committee



## TAPERS

Wage for work classification A, as described: All New Construction except as described in 5.1 C

| Effective From | J | F | GF | H&W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $28.50 | $31.35 | $32.75 | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/01 | $29.20 | $32.15 | $33.60 | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $29.90 | $32.90 | $34.40 | 14 | $3.60 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $30.60 | $33.65 | $35.20 | 14 | $3.90 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $31.30 | $34.45 | $36.00 | 14 | $4.20 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $32.05 | $35.25 | $36.85 | 14 | $4.50 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |

Abbreviations:

J-Journeyman Painter   F-Foreman Painter   GF-General Foreman
H&W-Health & Welfare   App-Apprentice   LMCF-Labor Management Contributions Fund   N-App-National Apprentice
Fund   IAF-Industry Advancement Fund   PAC-Political Action Committee

14

Tapers

Wage for work classification B, as described: Taping and preparation on jobs where no major alteration occur, and not more than three (3) other than painters and allied trades are present on the job site, but excluding generating stations.

| Effective From | J | F | GF | H&W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $22.00 | $24.20 | $25.30 | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/01 | $22.50 | $24.75 | $25.85 | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $23.00 | $25.30 | $26.45 | 14 | $3.60 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $23.50 | $25.85 | $27.05 | 14 | $3.90 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $24.00 | $26.40 | $27.60 | 14 | $4.20 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $24.55 | $27.00 | $28.25 | 14 | $4.50 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |

continued

Abbreviations:

J-Journeyman Painter    F-Foreman Painter    GF-General Foreman
H&W-Health & Welfare    App.-Apprentice    LMCF-Labor Management Contributions Fund    N-App-National Apprentice
Fund    IAF-Industry Advancement Fund    PAC-Political Action Committee

Taper C-Rate

Wage for work classification B, as described: New Residences and apartment building up to three (3) stories in height. Any repaint job which was last done by non-union forces. This includes repaint of all public buildings. Any other New Construction job having an open-shop general contractor, with prior written permission from the Union.

| Effective From | J | F | GF | H&W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $18.00 | $19.80 | $25.30 | 14 | $2.50 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/01 | $18.60 | $20.45 | $25.85 | 14 | $2.50 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $19.20 | $21.15 | $26.45 | 14 | $2.50 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $20.40 | $22.45 | $27.60 | 14 | $2.50 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $20.40 | $22.45 | $27.60 | 14 | $2.50 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $21.45 | $23.60 | $28.25 | 14 | $2.50 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |

Abbreviations:

J-Journeyman Painter    F-Foreman Painter    GF-General Foreman
H&W-Health & Welfare    App.-Apprentice    LMCF-Labor Management Contributions Fund    N-App-National Apprentice
Fund    IAF-Industry Advancement Fund    PAC-Political Action Committee

15

## GLAZIER

Wage for work classification A, as described: All New Construction except as described in 5.1 C

| Effective From | J | F | GF | H&W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $28.50 | $30.00 | — | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/01 | $29.20 | $30.70 | — | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $29.90 | $31.40 | — | 14 | $3.60 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $30.60 | $32.10 | — | 14 | $3.90 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $31.30 | $33.05 | $34.05 | 14 | $4.20 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $32.05 | $34.05 | $35.05 | 14 | $4.50 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |

Abbreviations:
J-Journeyman Painter    F-Foreman Painter    GF-General Foreman
H&W-Health & Welfare    App.-Apprentice    LMCF-Labor Management Contributions Fund    N-App-National Apprentice
Fund    IAF-Industry Advancement Fund    PAC-Political Action Committee

## INDUSTRIAL WORKERS

| Effective From | Wage | H & W % | Pension $ | App. % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $10.20 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/01 | $10.60 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $11.00 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $11.40 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $11.80 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $12.20 | 20 | $1.25 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |

Abbreviations:
H&W-Health & Welfare    App.-Apprentice    LMCF-Labor Management Contributions Fund    N-App-National Apprentice
Fund    IAF-Industry Advancement Fund    PAC-Political Action Committee

16

## GRANDFATHERED FABRICATORS/SERVICE MECH

| Effective From | Wage | H & W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $18.50 | 20 | $3.00 | 1 | 5 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/01 | $19.00 | 20 | $3.00 | 1 | 6 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $19.50 | 20 | $3.00 | 1 | 7 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $20.00 | 20 | $3.00 | 1 | 8 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $20.50 | 20 | $3.00 | 1 | 8 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $21.00 | 20 | $3.00 | 1 | 8 | 0.05 | 0.05 | 0.15 | 0.07 |

Abbreviations:
H&W-Health & Welfare    App.-Apprentice    LMCF-Labor Management Contributions Fund    N-App-National Apprentice
Fund    IAF-Industry Advancement Fund    PAC-Political Action Committee

### Fabricators/Service Mech

| Effective From | Wage | H & W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $13.75 | 25 | $1.50 | 1 | 5 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/01 | $14.25 | 25 | $1.50 | 1 | 5 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $14.75 | 25 | $1.50 | 1 | 5 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $15.25 | 25 | $1.50 | 1 | 5 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $15.75 | 25 | $1.50 | 1 | 5 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $16.25 | 25 | $1.50 | 1 | 5 | 0.05 | 0.05 | 0.15 | 0.07 |

Abbreviations:
H&W-Health & Welfare    App.-Apprentice    LMCF-Labor Management Contributions Fund    N-App-National Apprentice
Fund    IAF-Industry Advancement Fund    PAC-Political Action Committee

17



| Painter | 5/1/00 | 5/1/01 | 5/1/02 | 5/1/03 | 5/1/04 | 5/1/05 |
|---|---|---|---|---|---|---|
| Journeyman | $28.50 | $29.20 | $29.90 | $30.60 | $31.30 | $32.05 |
| Foreman | $31.35 | $32.15 | $32.90 | $33.65 | $34.45 | $35.25 |
| General Foreman | $32.75 | $33.60 | $34.40 | $35.20 | $36.00 | $36.85 |
| Spray, Stack, Tank, Swing | $31.00 | $31.95 | $32.90 | $33.65 | $34.45 | $35.25 |
| Foreman Spray, Tank Swing, Stack | $33.85 | $35.40 | $36.20 | $37.15 | $37.90 | $38.00 |
| Gen. Foreman Spray, Tank Swing, Stack | $35.70 | $36.95 | $37.85 | $38.75 | $39.65 | $40.55 |
| Annuity | 12% Gross ($3.42) | 12% Gross ($3.51) | 12% Gross ($3.60) | 12% Gross ($3.69) | 12% Gross ($3.78) | 12% Gross ($3.87) |
| Health & Welfare | 14% Gross (#3.99) | 14% Gross ($4.095) | 14% Gross ($4.20) | 14% Gross ($4.305) | 14% Gross ($4.41) | 14% Gross ($4.515) |
| Education And Training | 1% Gross (.285) | 1% Gross (.29) | 1% Gross (.30) | 1% Gross (.31) | 1% Gross (.315) | 1% Gross (.32) |
| Pension | $3.00 | $3.30 | $3.60 | $3.90 | $4.20 | $4.50 |
| L.M.C.F. | .05 | .05 | .05 | .05 | .05 | .05 |
| National Apprentice | .05 | .05 | .05 | .05 | .05 | .05 |
| Package | $39.30 | $40.48 | $41.675 | $42.86 | $44.055 | $45.308 |

18



| Painter Repaint | 5/1/00 | 5/1/01 | 5/1/02 | 5/1/03 | 5/1/04 | 5/1/05 |
|---|---|---|---|---|---|---|
| Journeyman | $22.00 | $22.50 | $23.00 | $23.50 | $24.00 | $24.55 |
| Foreman | $24.20 | $24.75 | $25.30 | $25.85 | $26.40 | $27.00 |
| General Foreman | $25.30 | $25.85 | $26.45 | $27.05 | $27.60 | $28.25 |
| Spray Swing | $24.20 | $24.75 | $25.30 | $25.85 | $26.40 | $27.00 |
| Foreman Spray, Swing | $26.80 | $27.20 | $27.85 | $28.45 | $29.05 | $29.70 |
| Gen. Foreman Spray, Swing | $27.80 | $28.45 | $29.10 | $29.75 | $30.40 | $31.05 |
| Annuity | 12% Gross | 12% Gross | 12% Gross | 12% Gross | 12% Gross | 12% Gross |
| Health & Welfare | 14% Gross | 14% Gross | 14% Gross | 14% Gross | 14% Gross | 14% Gross |
| Education And Training | 1% Gross | 1% Gross | 1% Gross | 1% Gross | 1% Gross | 1% Gross |
| Pension | $3.00 | $3.30 | $3.60 | $3.90 | $4.20 | $4.50 |
| L.M.C.F. | .05 | .05 | .05 | .05 | .05 | .05 |
| National Apprentice | .05 | .05 | .05 | .05 | .05 | .05 |
| Package | $31.04 | $31.975 | $32.91 | $33.845 | $34.78 | $35.779 |

19



| C-Rate Painter | 5/01/00 | 5/01/01 | 5/01/02 | 5/01/03 | 5/01/04 | 5/01/05 |
|---|---|---|---|---|---|---|
| Journeyman | $18.00 | $18.60 | $19.20 | $19.80 | $20.40 | $21.45 |
| Foreman | $19.80 | $20.45 | $21.15 | $21.75 | $22.45 | $23.60 |
| General Foreman | $20.70 | $21.40 | $22.10 | $22.80 | $23.50 | $24.70 |
| Spray | $19.60 | $20.45 | $21.15 | $21.75 | $22.45 | $23.60 |
| Foreman Spray | $21.50 | $22.45 | $23.25 | $23.85 | $24.70 | $25.95 |
| General Foreman Spray | $22.55 | $23.45 | $24.30 | $25.05 | $25.80 | $27.15 |
| Annuity | 12% | 12% | 12% | 12% | 12% | 12% |
| Health & Welfare | 14% | 14% | 14% | 14% | 14% | 14% |
| Education & Training | 1% | 1% | 1% | 1% | 1% | 1% |
| Pension | $2.50 | $2.50 | $2.50 | $2.50 | $2.50 | $2.50 |
| L.M.C.F. | .05 | .05 | .05 | .05 | .05 | .05 |
| National Apprentice | .05 | .05 | .05 | .05 | .05 | .05 |
| Package | $25.46 | $26.22 | $26.98 | $27.746 | $28.508 | $29.84 |

20



| Taper | 5/1/00 | 5/1/01 | 5/1/02 | 5/1/03 | 5/1/04 | 5/1/05 |
|---|---|---|---|---|---|---|
| Journeyman | $28.50 | $29.20 | $29.90 | $30.60 | $31.30 | $32.05 |
| Foreman | $31.35 | $32.15 | $32.90 | $33.65 | $34.45 | $35.25 |
| General Foreman | $32.75 | $33.60 | $34.40 | $35.20 | $36.00 | $36.85 |
| Annuity | 14% Gross | 12% Gross | 12% Gross | 12% Gross | 12% Gross | 12% Gross |
| Health & Welfare | 14% Gross | 14% Gross | 14% Gross | 14% Gross | 14% Gross | 14% Gross |
| Education & Training | 1% Gross | 1% Gross | 1% Gross | 1% Gross | 1% Gross | 1% Gross |
| Pension | $3.00 | $3.30 | $3.60 | $3.90 | $4.20 | $4.50 |
| L.M.C.F. | .05 | .05 | .05 | .05 | .05 | .05 |
| National Apprentice | .05 | .05 | .05 | .05 | .05 | .05 |
| Package | $39.86 | $40.48 | $41.67 | $42.86 | $44.05 | $45.30 |

21

| Taper B-Rate | 5/1/00 | 5/1/01 | 5/1/02 | 5/1/03 | 5/1/04 | 5/1/05 |
|---|---|---|---|---|---|---|
| Journeyman | $22.00 | $22.50 | $23.00 | $23.50 | $24.00 | $24.55 |
| Foreman | $24.20 | $24.75 | $25.30 | $25.85 | $26.40 | $27.00 |
| General Foreman | $25.30 | $25.85 | $26.45 | $27.05 | $27.60 | $28.25 |
| Annuity | 14% Gross | 12% Gross | 12% Gross | 12% Gross | 12% Gross | 12% Gross |
| Health & Welfare | 14% Gross | 14% Gross | 14% Gross | 14% Gross. | 14% Gross | 14% Gross |
| Education & Training | 1% Gross | 1% Gross | 1% Gross | 1% Gross | 1% Gross | 1% Gross. |
| Pension | $3.00 | $3.30 | $3.60 | $3.90 | $4.20 | $4.50 |
| L.M.C.F. | .05 | .05 | .05 | .05 | .05 | .05 |
| National Apprentice | .05 | .05 | .05 | .05 | .05 | .05 |
| Package | $31.48 | $31.975 | $32.91 | $22.84 | $34.78 | $35.779 |

22

| Taper C-Rate | 5/1/00 | 5/1/01 | 5/1/02 | 5/1/03 | 5/1/04 | 5/1/05 |
|---|---|---|---|---|---|---|
| Journeyman | $18.00 | $18.60 | $19.20 | $19.80 | $20.40 | $21.45 |
| Foreman | $$19.80 | $20.45 | $21.15 | $21.75 | $22.45 | $23.60 |
| General Foreman | $$20.70 | $21.40 | $22.10 | $22.80 | $23.50 | $24.70 |
| Annuity | 12% Gross | 12% Gross | 12% Gross | 12% Gross | 12% Gross | 12% Gross |
| Health & Welfare | 14% Gross | 14% Gross | 14% Gross | 14% Gross | 14% Gross | 14% Gross |
| Education & Training | 1% Gross | 1% Gross | 1% Gross | 1% Gross | 1% Gross | 1% Gross |
| Pension | $2.50 | $2.50 | $2.50 | $2.50 | $2.50 | $2.50 |
| L.M.C.F. | .05 | .05 | .05 | .05 | .05 | .05 |
| National Apprentice | .05 | .05 | .05 | .05 | .05 | .05 |
| Package | $25.46 | $26.22 | $26.98 | $27.746 | $28.508 | $29.84 |

23



| Glazier | 5/1/00 | 5/1/01 | 5/1/02 | 5/1/03 | 5/1/04 | 5/1/05 |
|---|---|---|---|---|---|---|
| Journeyman | $28.50 | $29.20 | $29.90 | $30.60 | $31.30 | $32.05 |
| Foreman | $31.35 | $32.15 | $32.90 | $33.65 | $34.45 | $35.25 |
| General Foreman | $32.75 | $33.60 | $34.40 | $35.20 | $36.00 | $36.85 |
| Annuity | 12% Gross | 12% Gross | 12% Gross | 12% Gross | 12% Gross | 12% Gross |
| Health & Welfare | 14% Gross | 14% Gross | 14% Gross | 14% Gross | 14% Gross | 14% Gross |
| Education & Training | 1% Gross | 1% Gross | 1% Gross | 1% Gross | 1% Gross | 1% Gross |
| Pension | $3.00 | $3.30 | $3.60 | $3.90 | $4.20 | $4.50 |
| L.M.C.F. | .05 | .05 | .05 | .05 | .05 | .05 |
| National Apprentice | .05 | .05 | .05 | .05 | .05 | .05 |
| Package | $39.30 | $40.48 | $41.67 | $42.86 | $44.05 | $45.30 |

24

**Fabricators/Service Mech.**
**Grandfathered**

| Effective | Wages | H & W | PEN. | ANN. | L.M.C.F. | N-APP. | E & T | I.A.F. | PKG. |
|---|---|---|---|---|---|---|---|---|---|
| 5/1/00 | $18.50 | 20% | $3.00 | 5% | .05 | .05 | 1% | .15 | $26.46 |
| 5/1/01 | $18.95 | 20% | $3.00 | 6% | .05 | .05 | 1% | .15 | $27.316 |
| 5/1/02 | $19.40 | 20% | $3.00 | 7% | .05 | .05 | 1% | .15 | $28.08 |
| 5/1/03 | $19.85 | 20% | $3.00 | 8% | .05 | .05 | 1% | .15 | $28.856 |
| 5/1/04 | $20.30 | 20% | $3.00 | 8% | .05 | .05 | 1% | .15 | $29.437 |
| 5/1/05 | $20.80 | 20% | $3.00 | 8% | .05 | .05 | 1% | .15 | $30.08 |

**Fabricators/Serv. Mech. (New)**

| Effective | Wages | H & W | PEN. | ANN. | L.M.C.F. | N-APP. | E & T | I.A.F. | PKG. |
|---|---|---|---|---|---|---|---|---|---|
| 5/1/00 | $13.75 | 25% | $1.50 | 5% | .05 | .05 | 1% | .15 | $19.76 |
| 5/1/01 | $14.20 | 25% | $1.50 | 5% | .05 | .05 | 1% | .15 | $20.35 |
| 5/1/02 | $14.65 | 25% | $1.50 | 5% | .05 | .05 | 1% | .15 | $20.94 |
| 5/1/03 | $15.10 | 25% | $1.50 | 5% | .05 | .05 | 1% | .15 | $21.53 |
| 5/1/04 | $15.55 | 25% | $1.50 | 5% | .05 | .05 | 1% | .15 | $22.12 |
| 5/1/05 | $16.05 | 25% | $1.50 | 5% | .05 | .05 | 1% | .15 | $22.775 |

**Wage and Benefit Schedule for Work Classification C**
**Industrial Workers**

| Effective | Wages | H & W | PEN. | ANN. | L.M.C.F. | N-APP. | E & T | I.A.F. | PKG. |
|---|---|---|---|---|---|---|---|---|---|
| 5/1/00 | $10.20 | 20% | $1.00 | — | .05 | .05 | 1% | .15 | $13.59 |
| 5/1/01 | $10.55 | 20% | $1.00 | — | .05 | .05 | 1% | .15 | $14.015 |
| 5/1/02 | $10.90 | 20% | $1.00 | — | .05 | .05 | 1% | .15 | $14.439 |
| 5/1/03 | $11.25 | 20% | $1.00 | — | .05 | .05 | 1% | .15 | $14.86 |
| 5/1/04 | $11.60 | 20% | $1.00 | — | .05 | .05 | 1% | .15 | $15.286 |
| 5/1/05 | $12.00 | 20% | $1.25 | — | .05 | .05 | 1% | .15 | $16.02 |

25



6.5  (A)  Apprentice rates shall be the following percentages of the base rate:

| First | 4 Months | 30% |
|---|---|---|
| 5 to | 8 Months | 40% |
| 9 to | 12 Months | 50% |
| 13 to | 16 Months | 60% |
| 17 to | 20 Months | 70% |
| 21 to | 24 Months | 75% |
| 25 to | 28 Months | 80% |
| 29 to | 32 Months | 85% |
| 33 to | 36 Months | 90% |

(B)  The change in rate shall apply after regular attendance at apprentice school and passing regular skills test. Journeyman status after 6000 hours of training.

(C)  Fringe benefits shall be a percentage (%) of the base wage listed in 6.4 as follows:

| Year | H & W | Pension | Annuity |
|---|---|---|---|
| First | 13% | | |
| Second | 14% | .50 hr. | 4% |
| Third | 14% | 1.00 hr. | 8% |

6.6  Effective May 1, 2000 the employer shall deduct $1.00 per hour from the pay of all Painters and Tapers; the deduction shall be $0.50 per hour from Glaziers pay. Effective May 1, 2001 the deduction shall also be $1.00 per hour from Glaziers pay. The deductions shall be paid into the Vacation Fund of District Council 711.

6.7  On jobs of four (4) or more employees, one person shall be designated as foreman. A general foreman shall be designated on jobs of fifteen (15) or more employees.

6.8  All employees shall be paid weekly at least 30 minutes prior to the end of the work day. Not more than three (3) days pay shall be held back for the period between the close of the pay period and pay day. A statement of earnings and deductions shall accompany the pay.

6.9  Employees shall be notified and paid in full at least thirty (30) minutes before being laid off at lunch or quitting time.

6.10  Employers who send employees to jobs outside the territorial jurisdiction shall pay the expense of travel, room and board.

26



6.11   Fringe benefit payment shall not apply to bonuses paid to key employees.

### ARTICLE 7
### HOURS & OVERTIME

7.1   The regular forty (40) hour week and eight (8) hour work day shall begin no earlier than 7:00 am and terminate no later than 5:30 pm, Monday through Friday. The Union and employer shall agree upon a starting time other than 8:00 am.

7.2   (A)   Overtime work on Saturday and after the regular work day shall be at the rate of time and one half, except as in 7.2(c).

(B)   Work on Sundays and holidays shall be at the double time rate, except as in 7.2(c).

(C)   For classifications 6.1(B) and 6.1(C) eight hour day, forty hour week (Monday through Sunday inclusive). All work over eight (8) hours in any one day or all work over forty (40) hours in any one week shall be paid at the rate of time and one half.

7.3   Employees shall be allowed five (5) minutes before lunch and ten (10) minutes before quitting time to wash and clean up; spray painters and sandblasters shall be allowed thirty (30) minutes at quitting time.

(A)   Employees shall receive an unpaid thirty (30) minute meal break after ten (10) hours of work.

(B)   Employees shall receive a ten (10) minute break during the first half of the work day.

7.4   Employees shall not report to the job earlier than fifteen (15) minutes prior to starting time. Foremen and general foreman may start thirty (30) minutes prior to starting time and remain thirty (30) minutes after quitting time.

7.5   Except for circumstances beyond the control of the employer, if an employee is not advised that there will be no work for him on an ensuing day and the employee reports for work at the proper time and then has no work assigned him, the employer shall pay such employee two (2) hours pay.

(A)   Employers may require that employees remain on the job or

27



in the shop for the periods indicated above for which they are paid.

(B)   In the event weather conditions require the stoppage of work on any day after work has begun, employees shall be paid to the next full hour.

7.6   If an employee fails to report to work and the employer finds he cannot use the employee upon his return to work, the employer shall have the option of either paying off the employee at once or requesting him to wait for any wages due him until the next regular pay day. Waiting time shall not enter into the settlement.

7.7   The following are recognized holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, General Election Day - afternoon (a full 8 hour day at regular wage rates is permitted prior to noon), Veterans Day, Thanksgiving Day, and Christmas Day.

7.8   In the event work is lost due to weather or job conditions, work may be accomplished on Saturday, Sunday at the regular straight time rate to make up for the lost time.

7.9   (A)   Ten percent (10%) shall be added to the previously indicated wage rates for any eight (8) hours work outside the regular work day. Fifteen percent (15%) shall be added to the wage rates for any second shift outside the regular work day.

(B)   In addition to the added amounts in 7.9A, when three (3) shifts exist, the second shift shall receive eight (8) hours pay for seven and one half (7 1/2) hours work; the third shift shall receive eight (8) hours pay for seven (7) hours work.

(C)   The above applies to work classification 6.1(A) only.

## ARTICLE 8
## CONTRACTUAL RELATIONS & OBLIGATIONS

8.1   One member of a firm is allowed to work with the tools and a contractor is one that employs, on average, at least one person throughout the year.

8.2   Each employer shall carry comprehensive kinds of insurance such as, but not limited to, worker's compensation, public liability and property damage on equipment, automotive and otherwise, when used by its employees, as well as other coverage carried by custom or practice in this

28

industry by contractors. Proof of such coverage is required, in writing, to the Union at least annually or more often if requested by the Union. In the event the insurance coverage is cancelled, the Union shall be immediately so notified in writing. Without such protection, the Union reserves the right to suspend this agreement, until the aforesaid insurance coverage has again been supplied and proof of such coverage, in writing, is received by the Union.

8.3   Each employer with one or more employees agrees as a matter of policy to elect, petition and qualify to become immediately before the commencement of work, a covered employer as permitted by the terms of the Unemployment and Temporary Disability Benefits Act of New Jersey. The Union shall be kept informed of the employer's acts of compliance and proof of compliance or rejection by the State of New Jersey shall be immediately provided to the Union by the employer. The purpose of this paragraph is to provide unemployment and temporary disability benefits for each employee on every job or in the shop. The temporary disability provision of the law, commonly known as the "State Plan: shall be adhered to by each employer for the benefit of the employees in the unit, unless the employer has a state approved private plan.

8.4   The employer agrees to provide immediate medical attention and hospitalization, if necessary, to any employee injured on the job, at no cost to the employee.

8.5   Except as qualified in 8.5(A), on or before the 15th of each month, the employer shall remit to the Union or its administrator the entire amounts deducted from wages, as required by this agreement and owing as well as all contributions required by this agreement as to each employee for the previous month.

(A)   Employers who do not have an acceptable three (3) year record of payments in this jurisdiction shall make payments of all fringe benefits, vacation funds and administrative dues to the shop steward or other person designated by the Union on a weekly basis.

(B)   If an Employer fails to make contributions in accordance with the agreement after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due together with attorney fees and such penalties as may to assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered

29

by any grievance or arbitration procedure or any "no strike" clause which may be provided or set forth elsewhere in this Agreement.

8.6    The Union agrees that journeymen will not be referred to a builder unless extenuating circumstances justifies the referral and the coalition is consulted prior to providing any employees.

8.7    In the event that a builder or general contractor owes monies for work performed on a job to a contractor who is signatory to an agreement with the Union, they will endeavor to do everything legally possible to see that all just debts owed to the contractor shall have been settled satisfactorily.

### ARTICLE 9
### WORKING CONDITIONS

9.1    The use of spray equipment is allowed to paint acoustical surfaces, ceiling grid, furniture, bar-joists, structural steel, corrugated ceiling and walls (including pipes, ducts, conduit, hangers, steel, etc. adjacent thereto), wood walls and ceilings, where exposed joists are thirty (30) inches or less on centers, fin type radiation, floors, louvers and gratings, block filler with backrolling; metal pan stairs and spindle railings, plastics and multi-color materials, lacquers and any other material deemed not brushable, and any and all work at housing projects. In the event a second employee is necessary in a spray painting operation, he shall also receive the spray rate provided he works in the immediate work area at all times the equipment is in use. He shall also relieve and otherwise assist the other person.

    (A)    The Joint Board shall study other processes, materials and surfaces and shall determine those which shall be added to those mentioned herein.

    (B)    The Business Manager shall be notified when spraying is contemplated.

9.2    The unrestricted use of tools of the painting trade is permitted on work classified in 6.1A (prevailing wage jobs); 6.1B; and 6.1C.

9.3    It is understood and agreed and recognized that traditional hand tools to perform work with namely hawks, trowels, bread pans, and broad knives, will be supplied by the Employees. The Employer shall furnish all other tools and equipment to work with and if at any time such tools or equipment or any material or work conditions shall constitute a hazard to health or physical safety, the Employer shall not permit his employees to

use such tools, equipment or materials or to work under such conditions. Employees refusing to work with such tools, equipment or materials or under such working conditions shall not be discriminated against by the Employer. Any disagreement arising hereunder shall be submitted to the Joint Trade Board as provided by this Agreement. No Employee shall be discriminated against for his refusal to work with or use stilts, or machine type tools for which has has not received training. There shall be no restrictions on the use of materials, tools, equipment or other labor-saving devices or on production output by employees; provided however the employee has been qualified by District Council 711 JATC Fund to the use of the tools involved. Past practice and policy is and shall continue to be recognized, meaning mechanical and machine type tools will not be used without the express consent and permission of the Union which will not be open to dispute, except for trained or experienced employees of DISCA members.

9.4  The employer shall abide by the terms of the Safety Act of the State of New Jersey as well as those of the Federal OSHA.

## ARTICLE 10
## FRINGE BENEFIT FUNDS

10.1  The Employers and the Union have established an Education and Training Fund to be known as the District Council 711 Education and Training Fund. Effective May 1, 2000, each employer shall contribute to the Apprenticeship and Training fund the amounts indicated in 6.4.

10.2  The Agreement between the Employer(s) and Union parties to this Agreement regarding payments to the International Joint Painting, Decorating and Drywall Apprenticeship and Manpower Training Fund is as follows:

(A)  Commencing with the first day of May, 2000, and for the duration of this Agreement and any renewals or extensions thereof, the Employer, as defined in the Agreement and Declaration of Trust executed by and between the International Union of Painters and Allied Trades and employer associations in the industry, agrees to make payments to the National Apprentice Fund for each employee covered by this Agreement, as follows:

(B)  For each hour, or portion thereof, for which an employee receives pay, the employer shall make a contribution in the amount indicated in 6.4 to the above named Apprenticeship Fund.

31

(C) For the purpose of this Article, each hour paid for, including hours attributable to show-up time and other hours for which pay is received by the employee shall be counted as wages for which contributions are payable.

(D) Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, journeymen, and probationary employees.

(E) The payments to the Training Fund required above shall be made to the National Training Fund which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as though he had actually signed the same.

10.3    International Union of Painters and Allied Trades Union and Industry Pension Fund.

The only agreement between the employer(s) and the Union parties to this Agreement regarding pensions or retirement for employees covered by this Agreement is as follows:

1. (A) Commencing with the first day of May, 2000, and for the duration of the Agreement, and nay renewals or extension thereof, the employer agrees to make payments to the IUPAT Union and Industry Pension Fund for each employee covered by this Agreement, as follows:

(B) For each hour or portion thereof for which an employee receives pay, the employer shall make a contribution of in the amount indicated in the 6.4 charts to the above named pension fund; allocations to the IUPAT Union and Industry Pension Plan and to the IUPAT Union and Industry Annuity Plan shall be as indicated in said charts.

(C) For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(D) Contributions shall be paid on behalf of any employee starting

32

with the employee's first day of employment in a job classifica-
tion covered by this Agreement. This includes, but is not limited
to, apprentices, helpers, trainees, and probationary employees.

(E)    The payments to the Pension Fund required above shall be
made to the IUPAT Union and Industry Pension Fund, which
was established under an Agreement and Declaration of Trust,
dated April 1, 1967. The employer hereby agrees to be bound
by and to the said Agreement and Declaration of Trust, as
amended from time to time, as though he had actually signed
the same.

2.    The employer hereby irrevocably designates as its representatives
on the Board of Trustees such trustees as are now serving, or who
will in the future serve, as employer trustees, together with their suc-
cessors. The employer further agrees to be bound by all actions
taken by the trustees pursuant to the said Agreement Declaration of
Trust, as amended from time to time.

The employer will not engage in any litigation against the Union,
on a subrogation theory, contribution theory or otherwise, so as to
obtain a money judgement from it in connection with any work relat-
ed disease, sickness, death, injury, or accident.

10.4    Health and Welfare Fund - By Agreement and Declaration of trust
dated june 1, 1990, the Association and Union Established the Painters
District Council 711 Health and Welfare Fund.

(A)    Employer contributions shall be in the amounts indicated in
6.4 charts.

## ARTICLE 11
## COOPERATION AND ADVANCEMENT FUNDS

11.1    Labor Management Cooperation Funds:

1.    Commencing as of the effective date of this Agreement, and for
the duration of this Agreement, and any renewals or extensions
thereof, the employer agrees to make payments to The Painters
and Allied Trades Labor-Management Cooperation Fund for
each employee covered by this Agreement, as follows:

(A)    For each hour of portion thereof, for which an employee
receives pay, the Employer shall make a contribution of
the amount indicated in 6.4 to the Fund.

33

(B)    For the purpose to this Article, each hour paid for, including hours attributable to show up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(C)    Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices and probationary employees.

(D)    The Employer and Union signatory to this Agreement agree to be bound by and to the Agreement and Declaration of Trust as amended from time to time, establishing the Fund.

2.    The Employer hereby irrevocably designates as its representative on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

3.    All contributions shall be made at such times and in such manner as the Trustees require; and the Trustees may at any time conduct an audit in accordance with the Agreement and Declaration of Trust.

11.2    Industry Advancement Fund:

1.    Effective May 1, 2000 each employer shall make a contribution of three cents ($.03) per hour per painter, fifteen cents ($.15) per hour per taper, and fifteen cents ($.15) per hour per glazier for each hour worked by each employee to the "Industry Advancement Fund" heretofore established and administered by Trustees appointed by each of the three (3) members of the Coalition solely for the advancement, and improvement of the trade and the payment of expenses in carrying out such programs and responsibilities.

## ARTICLE 12
## POLITICAL ACTION FUND

12.1    Employers signatory to this agreement shall deduct form the wages of each Union Employee, the voluntary sum of seven cents ($.07) for each hour worked as a non-deductible political contribution to the DC

34

#711 Political Action Committee (PAC).

12.2   The obligation of the employer shall apply only as to those employees who have voluntarily signed a valid deduction authorization card.

    (A)   The Union shall advise the employer of any employee who has not signed a deduction authorization card.

## ARTICLE 13
## SAFETY

13.1   The employer shall, at all times, provide safe tools, materials and equipment and safe working conditions. If at any time, in the opinion of an employee, such tools, materials, or equipment or working conditions are unsafe and constitute a hazard to health or physical safety, the employee shall have the right to refuse to work with such tools, materials and equipment or under such hazardous conditions unless or until they are made safe. No employee shall be dismissed, disciplined or otherwise discriminated against, nor shall his pay be withheld, for refusal to work with such unsafe tools, materials, or equipment or under such unsafe or hazardous working conditions. The final decision as to safety of tools and working conditions shall be made by the general foreman, foreman or the supervisory person competent in safety measures.

13.2   An employee who does not follow safety procedures or instructions and causes, thereby, and employer; to receive an OSHA fine, shall pay an amount equal to the lesser of 10% of the OSHA fine or Twenty-Five Hundred Dollars ($2,500.00) to the Joint Trade Board as determined by said board.

## ARTICLE 14
## UNION REPRESENTATIVES & SHOP STEWARDS

14.1   The Union Business Manager is the sole agent on behalf of the Union to take any action in respect to strikes or other interference with work. There shall be no overtime work without the permission of the Business Manager.

14.2   The Business Manager and/or assistant shall have the right to visit any building, shop or job in the discharge of his duties.

14.3   At the discretion of the Union a shop or job steward shall be referred in all shops/jobs. Steward may be appointed from those men working on the job.

35

(A)  The shop steward may handle routine grievances on the job but is not authorized to call work stoppages or make any agreement which contradicts, changes, modifies or alters the terms of this agreement.

(B)  In the event of emergent difficulties, he shall so notify the Business Manager.

(C)  Except for general foreman and foreman, the steward is senior and, provided he remains qualified to do the work, the shop or job steward shall be the last person laid off among the employees in the bargaining unit in any shop and/or job.

## ARTICLE 15
## SUBCONTRACTING

15.1  Subcontracting shall not be permitted except to signatory contractors whose employees receive comparable wages, hours of work and working conditions as hereunder.

(A)  Unemployed Union Painters may take work on a contract basis not to exceed one thousand dollars ($1,000.00). The member must notify the Union before starting the job and the Union shall advise the Association of the job. If there is no objection based upon the fact that an Association member bid the job, the Union member may commence the work. A Union member in violation shall be brought before the Joint Trade Board and, if found guilty, shall be fined one thousand dollars ($1,000.00) for the first offense; two thousand dollars ($2,000.00) for the second offense; and expelled from the Union for the third offense.

## ARTICLE 16
## PRESERVATION OF WORK CLAUSE

16.1  To protect and preserve, for the employees covered by this Agreement, all work they have performed and all work covered by this Agreement, and to prevent any device or subterfuge to avoid the protection and preservation of such work, it is agreed as follows: If the employer performs on site construction work of the type covered by this Agreement, under its own name or the name of another, as a corporation, company, partnership, or other business entity, including a joint venture, wherein the employer, through its officers, directors, partners, owners, or stockholders, exercises directly or indirectly (through family members or otherwise) man-

36

agement, control, or majority ownership, the terms and conditions of this Agreement shall be applicable to all such work.

2. All charges of violations of Section 1 of this article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement on the handling of grievances and the final and binding resolution of disputes. As a remedy for violations of this article, the Joint Trade Board shall be able, at the request of the Union, to require an Employer to pay: 1) to affected employees covered by this Agreement, including applicants registered for employment by the Union the equivalent of wages those employees have lost because of the violations, and 2) into the affected Trust Funds to which this Agreement requires contributions, and delinquent contributions that resulted from the violations. The Union shall enforce a decision of the Joint Trade Board under this Article only through arbitral, judicial, or governmental (for example, the National Labor Relations Board) channels.

16.3  If, after an employer has violated this Article, the Union and/or the Trustees of one or more Joint Trust Funds to which this Agreement requires contributions institute legal action to enforce an award by the Joint Trade Board remedying such violation, or defend an action that seeks to vacate such award, the employer shall pay any accountants' and/or attorneys' fees incurred by the Union and/or the Joint Trust Funds, plus costs incurred by the Union and/or the Joint Trust Funds, plus costs of the litigation, that have resulted from such legal action provided, however, that if such litigation determines that the employer is not in violation of this Article, the prevailing party shall be entitled to said fees from the losing party. This section does not affect other remedies, whether provided by law or this Agreement, that may be available to the Union and/or the Joint Trust Funds.

### ARTICLE 17
### JOINT TRADE BOARD

17.1  The parties shall establish and maintain a Joint Board composed of fourteen (14) members, seven (7) representing the Union (including the business manager) and seven (7) representing the Association (including the chairman).

(A)  The Union and Coalition members shall include representatives of the following trades and industries: five (5) painters, one (1) taper and one (1) glazier.

37

(B) Ten (10) members, five (5) representing each party, shall constitute a quorum. Decisions shall be made by majority vote provided that the Union representatives and Association representatives shall have equal voting strength with respect to each vote. Members of the Joint Board shall choose a chairman and co-chairman to serve such terms as agreed upon by the Board, provided that one such officer shall represent each party.

17.2   The Joint Board shall meet regularly at least once every three (3) months. Special meetings may be called by the chairman or co-chairman when prompt hearing and decision is required in any dispute.

17.3   The Joint Board is empowered to hear and decide all grievances and disputes which may arise between the parties as to the interpretation or application of this agreement; to award or assess remedies, damages and penalties for violations of this agreement provided, however, any assessment of damages shall not exceed Five Thousand Dollars ($5,000.00); to issue interpretive rulings or other rules and regulations as it deems necessary to give force and effect to the purpose and intention of this agreement; to investigate all grievances and disputes submitted to it, including audits of records; to recommend amendments to or changes in the agreement but only upon the written request of both parties; to appoint such persons or committees as necessary to aid the Board in the performance of its duties; and to demand of those who repeatedly violate this agreement the posting of a cash or surety bond to assure future compliance.

17.4   All grievances and disputes shall be submitted in writing to the chairman and co-chairman.

17.5   If all facilities to resolve disputes over the interpretation of the terms or conditions of an existing agreement have failed of settlement, both parties agree before strike or lockout, or the resort to proceedings before the National Labor Relations Board, State Government Boards or the courts, to submit the dispute to the Joint National Trade Board for binding decision. The Joint National Trade Board is hereby authorized and empowered to delegate any question or issue submitted, to a committee of two (2), one (1) of whom shall be appointed by each of the respective presidents of the IUPAT and the National Trade organization of the affected coalition member for the purpose of investigation, making recommendations to the Board, or, in fact, resolving or determining the particular issue, which determination shall be binding with the same force and effect as though rendered by the Board itself.

17.6   The remedies and sanctions specified in this section are in addi-

38



tion to other remedies and sanctions that may be permitted by other provisions of this agreement or by law.

17.7   There shall be no strike or lockout on any job over any grievance or dispute while it is being processed through this grievance procedure and until the said procedure has been exhausted. However, and not withstanding any contrary provision of this agreement, the Union may remove employees from any job or jobs of an individual employer who fails or refuses to pay the wages and fringe benefits, or refuses to stand trial under these procedures, or fails to comply with a final and binding decision issued at any level of this grievance procedure. Nothing stated in this section shall preclude the employer from resorting to the grievance procedure with respect to any action or sanction taken or imposed by the Union hereunder.

17.8   The Board shall maintain full and complete records and minutes of its proceedings which may be inspected at any reasonable time by the parties to this agreement.

17.9   At the commencement of each contract year or upon beginning of work within the territory during each contract year, each employer shall pay to the Joint Board the sum of Fifty Dollars ($50.00).

(A)   All funds shall be used as determined by the Board for the purpose of advertising, advancing the trade, protecting the standards of work and employment, training employees in the use of new materials and work techniques, protecting the combined interests of employees and employers alike, advancing the trade, educational programs, and the payment of all expenses of the Board on carrying out said programs and responsibilities.

**ARTICLE 18**
**SUCCESSOR CLAUSE**

This Agreement, and any supplements or amendments thereto, hereinafter referred to collectively as "agreement," shall be binding upon the parties hereto, their successors, administrators, executors and assigns.

In the event the Employer's business is, in whole or in part, sold, leased, transferred, or taken over by sale, transfer, lease, assignment, receivership, or bankruptcy proceedings, such business and cooperation shall continue to be subject to the terms and conditions this Agreement for the life thereof.

It is understood by this provision that the parties hereto shall not use any leasing or other transfer device to a third party to evade this Agreement.

39



The Employer shall give notice of the existence of this Agreement and this provision to any purchaser, transferee, lessee, assignee, etc., of the business and operation covered by this Agreement or any part thereof. Such notice shall be in writing with a copy of said notice forwarded to the Union, at the time the seller, transferor, or lessor executes a contract or transaction as herein described. The Union shall also be advised of the exact nature of the transaction, not including financial details.

In the event the Employer fails to require the purchaser, transferee, or lessee to assume the obligations of this Agreement, the Employer (including partners thereof) shall be liable to the Union, and to the employees covered for all damages sustained as a result of such failure to require assumption of the terms of this Agreement, but shall not be liable after the purchaser, transferee, or lessee has agreed in writing to assume to obligations of this Agreement. Retail establishments are exempt herefrom.

### ARTICLE 19
### GENERAL SAVINGS CLAUSE

If any article or section of this Agreement should be held invalid by operation of law or by any tribunal of competent jurisdiction, or if compliance with or enforcement of any Article or Section should be restrained by such tribunal pending a final determination as to its validity, the remainder of this Agreement or the application of such Article or Section to persons or circumstances other than those as to which it has been held invalid or as to which compliance with or enforcement of has been restrained, shall not be affected thereby.

In the event that any article or Section is held invalid or enforcement of or compliance with any article or section has been restrained, as above set forth, the affected parties shall meet at the request of the Union, for the purpose of arriving at a mutually satisfactory replacement for such article or section during the period of invalidity or restraint. If the parties do not agree on a mutually satisfactory replacement within sixty (60) days after beginning of the period of invalidity or restraint, either party shall be permitted all legal or economic recourse in support of its demands notwithstanding any provision in this agreement to the contrary.

### ARTICLE 20
### DURATION CLAUSE

20.1  Previously negotiated existing agreement shall remain in full force and effect until and including April 30, 2000. Thereafter said Agreement shall be null and void.

20.2   This Agreement shall be in full force and effect until and including April 30, 2006, and shall continue from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other not less than sixty (60) and not more than ninety (90) days prior to April 30th, of any subsequent contract year.

20.3   Where no such cancellation of termination is served and the parties desire to continue said Agreement, but also desire to negotiate changes or revisions in this Agreement, either party may serve upon the other a written notice not less than sixty (60) and not more than ninety (90) days prior to April 30, 2006 of any subsequent contract year, advising that such party desires to revise or change terms or conditions of such Agreement. The respective parties shall be permitted all legal or economic recourse to support their requests for revisions if the parties fail to agree thereon. Nothing herein shall preclude the parties from making revisions or changes in this Agreement, by mutual consent, at any time during its term.

IN WITNESS WHEREOF the parties hereto have set their hands and seals, this 16th day of November, 1999, to be effective as of 11/16/99, except as to those provisions where it has been otherwise agreed between the parties.



PAINTERS D.C. #711, IUPAT

GARDEN STATE COUNCIL, PDCA

NEW JERSEY GLASS & METAL CONTRACTOR ASSOCIATION

DRYWALL AND INTERIOR SYSTEMS CONTRACTORS ASS'N., INC. OF NJ

EXECUTIVE DIRECTOR

41

THE PARTIES HERETO ARE DESIROUS OF ENTERING INTO AN AGREEMENT TO SET FORTH CONTROL AND REGULATE THE WAGES, HOURS, FRINGE BENEFITS, TERMS AND CONDITIONS OF EMPLOYMENT UNDER WHICH THE EMPLOYERS WILL EMPLOY PAINTERS, TAPERS, GLAZIERS AND ALLIED TRADES. EFFECTIVE MAY 1, 2000 THROUGH APRIL 30, 2006.

AT THE COMMENCEMENT OF EACH CONTRACT YEAR OR UPON BEGINNING OF WORK WITHIN THE TERRITORY DURING EACH CONTRACT YEAR, EACH EMPLOYER SHALL PAY THE JOINT TRADE BOARD THE SUM OF FIFTY DOLLARS ($50.00) (SEE ARTICLE 17.9).

BUSINESS NAME _R. M. King Construction Co. Inc._

BUSSINESS ADDRESS _1535 Route 206 Tabernacle NJ 08088_

PHONE# _(609) 268-4444_      FAX# _(609) 268-4446_

FEDERAL ID# _22-3653172_

WORKMEN COMPENSATION INS. CO. _Preserver Insurane Co._

UNEMPLOYMENT COMPENSATION _State of N.J_

TEMPORARY DISABILITY BENEFITS INS. _State of NJ_

SIGNED THIS ___28th___ DAY OF __Jan.__, 20_02_

EMPLOYERS SIGNATURE & POSITION _(signature)_ (PRES.)

FOR THE UNION _(signature)_
PATRICK J. BRENNAN, BUSINESS MANAGER OF DISTRICT COUNCIL 711

DISTRICT COUNCIL 711
INTERNATIONAL UNION OF
PAINTERS AND ALLIED TRADES
STATE OF NEW JERSEY

UNION COPY



RECEIVED
FEB 0 8 2002
IUPAT PENSION FUND

# RESTATED
# AGREEMENT AND DECLARATION OF TRUST

### Establishing the

### International Painters and Allied Trades

### Industry Pension Fund

This AGREEMENT AND DECLARATION OF TRUST is by and between the INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES (hereinafter referred to as the "Union"), and the FINISHING CONTRACTORS ASSOCIATION (hereinafter referred to as the "F.C.A."), and various employers of members of the union who are or may become parties to this Agreement as hereinafter defined (hereinafter referred to as "Employer" or "Employers").

## WITNESSETH:

WHEREAS, the International Union of Painters and Allied Trades, and/or various Local Unions or District Councils of the Union, and Employers have entered into or expect to enter into collective bargaining agreements which provide, among other things, for the establishment of a Pension Fund and prescribe the contributions or payments to be made by the Employers to such Fund; and

WHEREAS, to accomplish the aforesaid purpose, it is desired to establish a Pension Fund as a Trust Fund for receiving contributions and providing benefits for eligible employees; and

WHEREAS, the said Trust Fund is to be known as the "International Painters and Allied Trades Industry Pension Fund"; and

WHEREAS, it is desired to set forth the terms and conditions under which the said Fund is to

36479-3



be established and administered; and

WHEREAS, it has been mutually agreed that the Fund shall be administered by Trustees, and it is desired to define the powers and duties of the Trustees and the nature of benefits to be provided;

NOW, THEREFORE, in consideration of the premises, and the mutual covenants herein contained it is mutually understood and agreed as follows:

## ARTICLE I

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement:

*Section 1.* AGREEMENT AND DECLARATION OF TRUST. The terms "Agreement and Declaration of Trust" or "Trust Agreement" shall mean this instrument, including any amendments hereto and modifications hereof. This Trust Agreement shall govern the operation of both the International Painters and Allied Trades Industry Pension Plan and the International Painters and Allied Trades Industry Annuity Plan.

*Section 2.* PENSION FUND. The terms "Pension Fund" or "Fund" shall mean the International Painters and Allied Trades Industry Pension Fund, established by the Trust Agreement and shall mean generally the monies and other items of value which comprise the corpus and additions thereto, contributions payable to the Fund, and amounts received or held for or on behalf of the Trustees under both the International Painters and Allied Trades Industry Pension Plan and the International Painters and Allied Trades Industry Annuity Plan and title to all such monies, and other items of value including contributions owed but not yet received, shall be vested in the Trustees of Fund. The Fund also shall be known as the "IUPAT Industry Pension Fund."

- 2 -

Section 3.     PENSION PLAN   The Term "Pension Plan" shall mean the Rules and Regulations of the International Painters and Allied Trades Industry Pension Plan, and any modification, amendment, extension or renewal thereof. The Pension Plan also shall be known as the "IUPAT Industry Pension Plan."

Section 4.     ANNUITY PLAN.  The term "Annuity Plan" shall mean the Rules and Regulations of the International Painters and Allied Trades Industry Annuity Plan and any modification, amendment, extension or renewal thereof. The Annuity Plan shall also be known as the "IUPAT Industry Annuity Plan."

Section 5.     TRUSTEES.

(a)     The term "Employer Trustees" shall mean the Trustees appointed by the Employers who are parties to this Agreement.

(b)     The term "Union Trustees" shall mean the Trustees appointed by the Union.

(c)     The terms "Board of Trustees," "Trustees" and "Board" shall mean the Employer Trustees and the Union Trustees, collectively, and shall include their successors when acting as Trustees. Except where "United States" or "Canadian" is used in conjunction with them, the terms "Board of Trustees," "Trustees" and "Board" shall mean United States Trustees in matters involving their competence, or Canadian Trustees in matters involving their competence as set forth in Article IV, Section 1.

Section 6.     UNION.  The term "Union" shall mean the International Union of Painters and Allied Trades and its affiliated Local Unions and District Councils.

- 3 -

36479-3

*Section 7*    CONTRIBUTING EMPLOYER. The term "Contributing Employer" shall mean any person, company or business organization which is or shall become a party to the Trust Agreement and which has agreed or shall agree in a Collective Bargaining Agreement with the Union to make contributions to the Pension Fund. In the case of an employer having more than one place of business, the term "Contributing Employers" shall apply only to the place of business specifically covered by the Collective Bargaining Agreement requiring contributions to the Pension Fund.

*Section 8.*    COLLECTIVE BARGAINING AGREEMENT.    The term "Collective Bargaining Agreement" shall mean any written labor contract by and between a Contributing Employer and the Union which provides for contributions to this Pension Fund with any and all extensions or renewals thereof and successor agreements thereto.

*Section 9.*    EMPLOYEE. The term "Employee means: (a) Any person who performs work under a Collective Bargaining Agreement between a Contributing Employer and the Union and for whom the Employer is obligated to make contributions to the Trust; (b) any full-time salaried officer and employee of any Local Union or District Council which is permitted to participate in the Fund in accordance with the Rules and Regulations of the Pension Plan or Annuity Plan; (c) any member of such other class of employees employed by an Employer which is not within the bargaining unit represented by the Union provided that the employee's class is accepted for participation in the Fund in accordance with the Rules and Regulations of the Pension Plan or Annuity Plan. The term "Employee" shall not include any self-employed person, a sole proprietor of or a partner in an unincorporated business, or, unless the Rules and Regulations provide otherwise, a

- 4 -

corporate shareholder who spends less than 50% of his time performing work covered by a collective bargaining agreement.

*Section 10*    EMPLOYER CONTRIBUTIONS. The term "Employer Contributions" shall mean payments made or that are required to be made to the Fund, including amounts owed but not yet paid, by a Contributing Employer under the provisions of, or in accordance with, a Collective Bargaining Agreement and the Trust Agreement, or with regard to a Local Union or District Council or special classes of employees of a Contributing Employer, payments to the Fund pursuant to and in accordance with the Rules and Regulations of the Pension Plan and the Annuity Plan. All such Employer Contributions are, and shall be considered as, plan assets from the date on which the hours (whether worked or paid) for which the Contributing Employer is obligated to pay contributions to the Fund accrue , whether or not such Employer Contributions are collected or received by the Fund. No Contributing Employer has any right, title, or interest to any sum payable by the Contributing Employer to the Fund, but not yet paid into the Fund. Title to all Employer Contributions paid into and/or due and owing to the Fund shall be vested in the Trustees of the Fund.

## ARTICLE II

## GENERAL

*Section 1.*    ESTABLISHMENT OF FUND. As hereby created, the International Painters and Allied Trades Industry Pension Fund shall comprise the entire assets derived from Employer Contributions made or payable to or for the account of this Fund under Collective Bargaining Agreements, together with any and all investments made and held by the Trustees, or monies received or payable to by the Trustees as contributions or as income from investments made and held

- 5 -

36479-3

by the Trustees or otherwise, and any other money or property, received and/or held by the Trustees

for the uses, purposes and trust set forth in this Agreement and Declaration of Trust.

Section 2.    GENERAL PURPOSE. The Fund shall be a Trust Fund and shall be used for

the purpose of providing Pension and Annuity Benefits, as decided by the Trustees, and shall further

provide the means for financing the expenses of the Trustees and the operation and administration of

the Fund, in accordance with this Agreement and Declaration of Trust.

# ARTICLE III

# UNITED STATES TRUSTEES

Section 1.    JOINT ADMINISTRATION. The operation and administration of the

Pension Fund shall be the joint responsibility of the Trustees appointed by the Employers and the

Trustees appointed by the Union.

Section 2.    ACCEPTANCE OF TRUSTEESHIP. The Trustees, by affixing their

signatures at the end of this Agreement and Declaration of Trust, agree to accept the Trusteeship and

act in their capacities strictly in accordance with the provisions thereof. Each additional or successor

Trustee shall execute a written acceptance in a form satisfactory to the Trustees and thereby shall be

deemed to have accepted the Trust created and established by this instrument and to have consented

to act as Trustee or to have agreed to administer the Trust Fund as provided herein. Such written

acceptance shall be filed with the Fund Administrator who shall notify the remaining Trustees of the

receipt of such acceptance.

Section 3.    TERMS OF TRUSTEES. Each Trustee shall continue to serve as such until

his death, incapacity, resignation, inability to serve pursuant to Section 9 of this Article, or removal,

as hereinafter provided.

Section 4.    The Board of Trustees shall consist of up to 24 Trustees, 12 to be appointed by the Union and 12 to be appointed by the Employers.

Section 5.    UNION TRUSTEES.  The Union shall be and is empowered to appoint all Union Trustees.

Section 6    EMPLOYER TRUSTEES.  The F.C.A. shall be and is empowered to appoint all Employer Trustees; provided, however, that the FCA must remain an organization that admits to its membership only 100% Union Signatory Employers in order to maintain its rights hereunder.

Section 7.    REMOVAL OF TRUSTEES.  The Union or the F.C.A. may remove any Trustee(s) appointed by it at any time, for any reason, with or without cause.

Section 8.    WHO MAY BE TRUSTEES.  At the time of his/her appointment to the Board of Trustees, each Employer Trustee must be signatory to a collective bargaining agreement requiring contributions to this Fund, with a Local Union or District Council in whose geographic jurisdiction its principal place of business is located and such Employer Trustees must also employ an average of twenty-five (25) or more employees.  Employer Trustees who satisfy these requirements at the time of their original appointment shall be considered as qualified during their tenure, until removed in accordance with provisions in this Trust.   Union Trustees shall be General Officers of the International Union or members of the IUPAT who, in the opinion of the Union, are most likely to conscientiously serve the bests interests of the Fund.

Section 9.    FORM OF NOTIFICATION.  In the event any Union Trustees are appointed or removed, a statement in writing by the Union shall be sufficient evidence of the action taken by

- 7 -

36479-3

the Union   In the event any Employer Trustees are appointed or removed, a statement in writing by the Employer or Association empowered to so appoint or remove shall be sufficient evidence of the action taken by said Employer or Association.   Any resignation by a Trustee shall be by certified mail, addressed to the office of the Fund

Section 10.     VESTING OF POWERS AND DUTIES.  Any additional or successor Trustee shall, immediately upon his appointment and his acceptance in writing filed with the Trustees, become vested with all the property, rights, powers and duties of a Trustee hereunder with like effect as if originally named as a Trustee and all the Trustees then in office and any Corporate Trustee or Corporate Agent appointed pursuant to Article V, Section 3, of this Trust Agreement and all other necessary persons shall be notified immediately.

## ARTICLE IV

## CANADIAN TRUSTEES

Section 1.     DECISIONS.  The Canadian Board of Trustees shall make all decisions, and only such decisions, that affect Canadian participants, retirees and beneficiaries, Canadian Employers and monies contributed by them, and funds maintained in Canada.

Section 2.     APPOINTMENT.  The Canadian Board of Trustees shall consist of up to 6 Trustees.  The Union may appoint 3 Trustees, 2 of whom shall be Canadian citizens.  Canadian Employers may appoint 2 Trustees who shall be Canadian citizens.  Employer Trustees of this Fund may appoint 1 Trustee.

Section 3.     REMOVAL.  The Union or Employers empowered by this Article to appoint Trustees may remove any Trustee(s) appointed by it or them.

- 8 -

36479-3

*Section 4.*       WHO MAY BE TRUSTEES. Each Employer Trustee must be signatory to a collective bargaining agreement, requiring contributions to this Fund, with a Local Union or District Council in whose geographic jurisdiction his principal place of business is located. Each Employer Trustee must also employ an average of twenty-five or more employees. Union Trustees shall be General Officers of the International Union or members of the IUPAT who, in the opinion of the Union, are most likely to conscientiously serve the bests interests of the Fund.

*Section 5.*       PROCEDURES. The procedures, rights and obligations set forth in Article III, Sections 2, 3, 9 and 10, shall apply to this Board of Trustees.

- 9 -

36479-3

# ARTICLE V

# POWERS, DUTIES AND OBLIGATIONS OF TRUSTEES

*Section 1.*    PROPERTY AND ASSISTANCE.  The Trustees are authorized and empowered to lease or purchase such premises, materials, supplies and equipment, and to hire and employ and retain such legal counsel, investment manager or counsel, administrative, accounting, actuarial, clerical and other assistants or employees as in their discretion they may find necessary or appropriate in the performance of their duties and to pay the costs thereof out of the Fund.

*Section 2.*    CONSTRUCTION OF AGREEMENT.  The Trustees shall have the power to construe the provisions of this Agreement and Declaration of Trust and the terms used herein and any construction adopted by the Trustees in good faith shall be binding upon the Union, the Contributing Employers, the employees and their families, dependents, beneficiaries and/or legal representatives.

*Section 3.*    GENERAL POWERS.  The Trustees are hereby empowered, in addition to other such powers as set forth herein or conferred by law:

(a) to establish and administer a Pension Fund, and Pension and Annuity Plans, on behalf of the Employees referred to in this instrument;

(b) to enter into any and all contracts and agreements for carrying out the terms of this Agreement and Declaration of Trust and for the administration of the Pension Fund and to do all acts as they, in their discretion, may deem necessary and advisable;

(c) to compromise, settle, arbitrate and release claims or demands in favor of or against the Pension Fund or the Trustees on such terms and conditions as the Trustees may deem advisable;

- 10 -

36479-1

(d) to establish and accumulate as part of the Pension Fund a reserve or reserves, adequate, in the opinion of the Trustees, to carry out the purpose of such Trust;

(e) to pay out of the Pension Fund all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Fund or any money, property, or securities forming a part thereof;

(f) to make appropriate allocations of common administrative expenses and disbursements shared or to be shared with any other Plan or Fund;

(g) to receive contributions or payments from any source whatsoever to the extent permitted by law;

(h) to invest and reinvest the Pension Funds in any type of investments and to take any and all action with respect to holding, buying, selling or maintaining such investments as they, in their sole discretion, may deem appropriate;

(i) to procure a group annuity contract or contracts in accordance with the Insurance Code of the District of Columbia for the purpose of providing some or all of the benefits to be provided under this Pension Fund and/or appoint a bank or banks or trust company or trust companies to be designated as (1) "Corporate Trustee," and to enter into and execute a trust agreement or agreements with such bank or banks or trust company or trust companies, to provide for the investment and reinvestment of assets of the Pension Fund with such other provisions incorporated therein as may be deemed desirable in the Trustee's sole discretion for the proper management of the Pension Fund and without limit with respect to the powers which the Trustees may grant to such Corporate Trustee, in such agreement to the extent permitted by law; or as (2) "Corporate Agent";

- 11 -

36479-3

(j) to do all acts, whether or not expressly authorized herein, that the Trustees may deem necessary or proper for the protection of the property held hereunder;

(k) to do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish to the general objective of enabling the employees to obtain pension and annuity benefits in the most efficient and economical manner.

*Section 4.*     COMPENSATION. The Union and Employer Trustees shall not receive compensation for the performance of their duties. However, they may be reimbursed for reasonable out-of-pocket travel and incidental expenses in connection with their duties as Trustees.

*Section 5.*     AUTHORITY TO ENTER INTO AGREEMENTS WITH OTHER TRUSTEES. The Trustees are hereby given authority to enter into agreements with Trustees of other Pension Funds to which the Union is a party to permit such other Pension Funds to join or merge with the Pension Fund.

*Section 6.*     PERSONAL LIABILITY. The liability, if any, of the Board of Trustees or any individual Trustee or Trustees shall be governed by the following provisions to the extent permissible by applicable Federal law: Neither the Trustees nor any individual or Successor Trustee shall be personally answerable or personally liable for any liabilities or debts of the Fund contracted by them as such Trustees, or for the non-fulfillment of contracts, but the same shall be paid out of the Fund and the Fund is hereby charged with a first lien in favor of such Trustee for his or their security and indemnification for any amounts paid out by any such Trustee for any such liability and for his and their security and indemnification against any liability of any kind which the Trustees or any of them may incur hereunder, including cost of defense of litigation; provided, however, that nothing

- 12 -

herein shall exempt any Trustee from liability arising out of his own willful misconduct, bad faith or gross negligence, or entitle such Trustee to indemnification for any amounts paid or incurred as a result thereof.

The Trustees and each individual Trustee shall not be liable for any error of judgment or for any loss arising out of any act or omission in the execution of their duties, except in case of willful misconduct, bad faith or gross negligence; nor shall any Trustee, in the absence of his own willful misconduct, bad faith or gross negligence, be personally liable for the acts or omissions (whether performed at the request of the Trustees or not) of any other Trustee, or of any agent or attorney elected or appointed by or acting for the Trustees.

The Trustees shall be fully protected in acting upon any instrument, certificate or paper believed by them to be genuine and to be signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

Neither the Employers, nor the Union, shall in any way be liable in any respect for any of the acts, omissions or obligations of the Trustees, individually or collectively.

The Trustees may from time to time consult with the Trust's legal counsel and shall be fully protected in acting upon such advice of counsel to the Trust as respects legal questions.

*Section 7.*     BOOKS OF ACCOUNT.  The Trustees shall keep true and accurate books of account and records of all their transactions, which shall be audited annually or more often by a certified public accountant selected by the Trustees.  A copy of such audit shall be available at all

- 13 -

36479-3

times upon reasonable notice for inspection by signatories to this Agreement at the principal office of the Fund.

Section 8.    EXECUTION OF DOCUMENTS. The Trustees may authorize an Employer Trustee and a Union Trustee or any joint group equally composed of Employer and Union Trustees to execute jointly any notice or other instrument in writing and all persons, partnerships, corporations or associations may rely thereupon that such notice or instrument has been duly authorized and is binding on the Pension Fund and the Trustees.

Section 9.    DEPOSIT AND WITHDRAWAL OF FUNDS. All monies received by the Trustees hereunder shall be deposited by them in such bank or banks as the Trustees may designate for that purpose and all withdrawals of monies from such account or accounts shall be made only by checks signed by the Trustees authorized in writing by the Trustees to sign such checks. No check shall be valid unless signed by two persons of whom one shall be a Union Trustee and one an Employer Trustee, except when signed by a designated employee as provided in this Section.

The Employer Trustees shall designate in writing the name or names of any Employer Trustee who may sign checks in the above manner, and the Union Trustees shall likewise designate in writing the name or names of the Union Trustee who may sign checks in the above manner.

The Trustees may, in their discretion, designate and authorize an employee of the Fund to sign checks upon such separate and specific bank account or bank accounts as the Trustees may designate and establish for that purpose.

Section 10.    SURETY BONDS. The Trustees and any employees of the Trustees who are empowered and authorized to sign checks as aforesaid shall each be bonded by a duly authorized

36479-3

surety company in such amount as may be determined from time to time by the Trustees. Each such employee employed by the Trustees who may be engaged in handling monies of the Pension Fund shall also be bonded by a duly authorized surety company in the same manner. The cost of the premium on such bonds shall be paid out of the Pension Fund.

## ARTICLE VI

## CONTRIBUTIONS TO THE PENSION FUND

*Section 1.*     RATE OF CONTRIBUTIONS. In order to effectuate the purpose hereof, each Employer shall contribute to the Pension Fund the amount required by the Collective Bargaining Agreement between the Union and the Employer. The rate of contribution shall at all times be governed by the aforesaid Collective Bargaining Agreement then in force and effect, together with any amendments, supplements or modification thereto. On matters other than contribution rates, contributions to the Pension Plan shall be governed by the Rules and Regulations of the Pension Plan; contributions to the Annuity Plan shall be governed by the Rules and Regulations of the Annuity Plan.

*Section 2.*     EFFECTIVE DATE OF CONTRIBUTIONS. All contributions shall be made effective as required by the Collective Bargaining Agreement and shall continue to be paid as long as the Employer is so obligated pursuant to the Collective Bargaining Agreement with the Union or until he ceases to be an Employer within the meaning of this Agreement and Declaration of Trust, as hereinafter provided.

*Section 3.*     MODE OF PAYMENT. All contributions shall be payable to the "IUPAT Industry Pension Fund" and shall be paid in the manner and form determined by the Trustees.

*Section 4*     DEFAULT IN PAYMENT.   Non-payment by an Employer of any

contributions when due shall not relieve any other Employer of his obligation to make payment. In

addition to any other remedies to which the parties may be entitled, an Employer in default for

twenty days may be required at the discretion of the Trustees to pay such reasonable rate of interest

as the Trustees may fix on the money due to the Trustees from the date when the payment was due to

the date when payment is made, together with all expenses of collection (including attorneys' fees)

incurred by the Trustees and such liquidated damages or penalties as may be assessed by the

Trustees.

*Section 5.*     REPORT ON CONTRIBUTIONS. The Employers shall make all reports on

contributions in such manner and form as required by the Trustees.

*Section 6.*     AUDITS.  The Trustees may at any time have an audit made by certified

public accountants of the payroll, wage and cash disbursement records, general ledger, and other

financial records, including but not limited to tax returns, of any Employer in connection with the

said contributions and/or reports.  When an Employer receives notice that the Employer is scheduled

for an audit, the Employer may write to the Fund 1) explaining why the time or date for the audit is

impossible for the Employer to comply with and 2) offering alternative times or dates for an audit

within a reasonable time.  If the Fund does not receive such a written response from the Employer

within 48 hours before the scheduled audit, the certified public accountants responsible for the audit

may proceed as scheduled.  If the Employer fails to cooperate with a scheduled audit, the Trustees

may require that the Employer pay to the Fund all costs incurred as a result of the Employer's failure.

Any Employer found delinquent or in violation of the Rules and Regulations of the Pension Plan

- 16 -

and/or the Annuity Plan as a result of an audit may be required by the Trustees to pay to the Fund the cost of the audit.

## ARTICLE VII

## PLAN OF BENEFITS

*Section 1.*    BENEFITS. The Trustees shall have full authority to determine all questions of the nature, amount and duration of benefits to be provided, based on what is estimated the Fund can provide without undue depletion or excess accumulation; provided, however, that no benefits other than pension, annuity, death, disability and severance benefits may be provided for or paid under this Agreement and Declaration of Trust.

*Section 2.*    RECIPIENTS OF BENEFITS. Benefits may be provided in accordance with Section 1 of this Article for any employee of a Contributing Employer covered by a Collective Bargaining Agreement between the Employer and the Union or other classes of employee defined in Article I, Section 9(a), (b) and (c).

*Section 3.*    ELIGIBILITY REQUIREMENTS FOR BENEFITS. The Trustees shall have full authority to determine eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the employees and their beneficiaries.

*Section 4.*    METHOD OF PROVIDING BENEFITS. The benefits shall be provided and maintained by such means as the Trustees shall in their sole discretion determine.

*Section 5.*    WRITTEN PLAN OF BENEFITS. The detailed basis on which payment of benefits is to be made pursuant to this Agreement shall be specified in writing by appropriate action of the Trustees subject, however, to such changes or modifications by the Trustees from time to time

- 17 -

36479.3

as they in their discretion may determine. All such changes or modifications shall similarly be specified in writing by appropriate resolution of the Trustees.

*Section 6.*    APPROVAL OF PLAN. (a) United States: The Pension Plan and Annuity Plan adopted by the Trustees shall be such as will qualify for approval by the Internal Revenue Service, U.S. Treasury Department, and will continue as qualified Plans, so as to ensure that the Employer contributions to the Pension Fund are proper deductions for income tax purposes. The Trustees are authorized to make whatever applications are necessary with the Internal Revenue Service to receive and maintain approval of the Pension Plan and the Annuity Plan. (b) Canada: The Pension Plan and Annuity Plan shall be such as will qualify for approval by Revenue Canada and for registration, as appropriate, under Provincial legislation.

*Section 7.*    LIMIT OF EMPLOYER'S LIABILITY. Except for withdrawal liability and delinquency liability provided by law, and except as provided in Article VI, the financial liability of any Employer shall in no event exceed the obligation to make contributions as set forth in its applicable Collective Bargaining Agreement with the Union.

## ARTICLE VIII

## MEETING AND DECISION OF TRUSTEES

*Section 1.*    OFFICERS OF TRUSTEES. The Trustees shall elect two Co-Chairmen, one from among the Union Trustees and the other from among the Employer Trustees. The terms of such officers shall commence on the date of their election and continue until his or their successors have been elected.

*Section 2.*    MEETING OF TRUSTEES. Meetings of the Trustees shall be held at such

- 18 -

J6479-3

place or places as may be agreed upon by the Co-Chairmen and may be called by the said officers

upon twenty (20) days' notice to the other Trustees and may be held at any time without such notice

if all the Trustees consent thereto in writing. The Co-Chairmen may also convene a meeting of the

Trustees by telephone conference called upon five (5) days notice to the other Trustees.

Section 3.    ACTION BY TRUSTEES WITHOUT MEETING.  Action by the Trustees

may also be taken by them in writing without a meeting; provided, however, that in such cases there

shall be unanimous written concurrence by all the Trustees.

Section 4.    QUORUM (UNITED STATES). In all meetings of the Trustees, two Trustees

shall constitute a quorum for the transaction of business providing that there is at least one Employer

and one Union Trustee present at the meeting. The vote of any absent Trustee shall be cast by the

Trustees present, designated by the same party with the same force as if such absent Trustee was

present. If at any time there is an unequal number of Employer and Union Trustees appointed, the

Employer Trustees and the Union Trustees shall have equal voting strength with the difference in the

number appointed treated as absent Trustees.

Section 5.    MAJORITY VOTE OF TRUSTEES (UNITED STATES). All action by the

Trustees shall be by majority decision of the Employer and Union Trustees. Such majority vote shall

govern not only this Article but any portion of this Agreement and Declaration of Trust which refers

to action by the Trustees. In the event any matter presented for decision cannot be decided because

of a tie vote, or because of the lack of quorum at two consecutive meetings, the matter shall be

submitted to arbitration as hereinafter provided.

Section 6.    QUORUM AND VOTING (CANADA).  In all meetings of the Canadian

- 19 -

36479-3

Trustees, two Trustees shall constitute a quorum for the transaction of business. All action by the Trustees shall be by unit vote, with the Union Trustees having 1 vote and the Employer Trustees having 1 vote. How each such vote is cast shall be decided by majority vote within each respective unit. In the event any matter presented for decision cannot be decided because of a tie vote, or because of the lack of quorum at two consecutive meetings, the matter shall be submitted to arbitration as hereinafter provided.

*Section 7.*    MINUTES OF MEETINGS. The Trustees shall keep minutes of all meetings but such minutes need not be verbatim. Copies of the minutes shall be sent to all Trustees.

## ARTICLE IX

## IMPARTIAL ARBITRATOR

*Section 1.*    APPLICATION OF THIS ARTICLE. If the Trustees cannot agree on an arbitrator, either the Employer Trustees or the Union Trustees or both may apply to the District Court of the United States for the District in the area in which the Fund maintains its principal office (the Canadian Trustees may apply to the competent court in the jurisdiction of the Courts of Ontario) for the designation of an arbitrator who will decide any dispute among the Trustees or any other matter submitted to arbitration in accordance with the provisions of Article VIII, Sections 5 or 6. The decision of the arbitrator shall be final and binding.

*Section 2.*    EXPENSES OF ARBITRATION. The cost and expense incidental to any arbitration proceedings, including the fee, if any, of the impartial arbitrator, shall be proper charges against the Fund and the Trustees are authorized to pay such charges.

- 20 -

36479-3

## ARTICLE X

## EXECUTION OF AGREEMENT AND DECLARATION OF TRUST

*Section 1.*    COUNTERPARTS.  This Agreement and Declaration of Trust may be executed in any number of counterparts   The signature of a party on any counterpart shall be sufficient evidence of his execution thereof.

*Section 2.*    WRITTEN INSTRUMENT.  An Employer may adopt and become a party to this Agreement and Declaration of Trust by executing a counterpart hereof or by executing any other written instrument wherein he agrees to participate in the Fund pursuant to the terms of this Agreement and Declaration of Trust, and upon written notification from the Trustees that he has been accepted as a Contributing Employer.

*Section 3.*    EFFECTIVE DATE.  The effective date of this Restated Agreement and Declaration of Trust is April 1, 2002.  This Restated Agreement and Declaration of Trust continues in effect, except as modified herein and by amendments duly adopted from time to time, the provisions of an Agreement and Declaration of Trust effective April 1, 1967.

## ARTICLE XI

## AMENDMENT TO AGREEMENT AND DECLARATION OF TRUST

*Section 1.*    AMENDMENT BY TRUSTEES.  This Agreement and Declaration of Trust may be amended in any respect from time to time by the Trustees, provided that each amendment shall be duly executed in writing by the Trustees.  As to any amendment, the Trustees, in their discretion, shall have power to fix the effective date thereof.  Notice of the proposed amendment shall be given at the time the notice of the meeting is given, unless waived by the Trustees.

- 21 -

36479-3

Section 2.    LIMITATION OF RIGHT TO AMENDMENT.  No amendment may be adopted which will be in conflict with the Collective Bargaining Agreements with the Union to the extent that such agreements affect contributions to the Fund created hereunder, be contrary to the laws governing trust funds of this nature, or be contrary to any agreements entered into by the Trustees.  Under no circumstances shall any amendment be adopted which will in any way alter Article XIII, Section 1.

Section 3.    NOTIFICATION OF AMENDMENT.  Whenever an amendment is adopted in accordance with this Article, a copy thereof shall be distributed to all Trustees, and the Trustees shall so notify all necessary parties and shall execute any instrument or instruments necessary in connection therewith.

# ARTICLE XII

# TERMINATION OF TRUST

Section 1.    BY THE TRUSTEES.  This Agreement and Declaration of Trust may be terminated by an instrument in writing executed by all the Trustees when there is no longer in force and effect a Collective Bargaining Agreement between an Employer and the Union requiring contributions to the Fund.

Section 2.    BY THE PARTIES.  This Agreement and Declaration of Trust may be terminated by an instrument in writing duly executed by the Employers and the Union.

Section 3.    PROCEDURE ON TERMINATION.  In the event of the termination of this Agreement and Declaration of Trust, the Trustees shall apply the Fund to pay or to provide for the payment of any and all obligations of the Fund and shall distribute and apply any remaining surplus

- 22 -

36479-3

in such manner as will, in their opinion, best effectuate the purpose of the Fund; provided, however, that no part of the corpus or income of said Fund shall be used for or diverted to purposes other than for the exclusive benefits of the employees, their families, beneficiaries or dependents, or the administrative expenses of the Fund or for other payments in accordance with the provisions of the Fund.

Section 4.    NOTIFICATION OF TERMINATION. Upon termination of the Fund in accordance with this Article, the Trustees shall forthwith notify each Local Union and/or District Council of the Union and each Employer, who are parties hereto, and also all other necessary parties; and the Trustees shall continue as Trustees for the purpose of winding up the affairs of the Trust.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

Section 1.    NON-REVERSION. Under no circumstances shall any portion of the corpus or income of the Fund, directly or indirectly, revert or accrue to the benefit of any Contributing Employer or Local Union, and/or District Council or the Union.

Section 2.    TERMINATION OF INDIVIDUAL EMPLOYERS. An Employer shall cease to be an Employer within the meaning of this Agreement and Declaration of Trust when he is no longer obligated, pursuant to a Collective Bargaining Agreement with the Union, to make contributions to this Pension Fund, or, as determined by the Trustees, when he is delinquent in his contributions or reports to the Pension Fund.

Section 3.    VESTED RIGHTS. No Employee or any person claiming by or through such Employee, including his family, dependents, beneficiary and/or legal representative, shall have any

- 23 -

right, title or interest in or to the Pension Fund or any property of the Pension Fund or any part thereof except as may be specifically determined by the Trustees.

Section 4.     ENCUMBRANCE OF BENEFITS.  No monies property or equity of any nature whatsoever, in the Pension Fund, or contracts or benefits or monies payable therefrom, shall be subject in any manner by an Employee or person claiming through such Employee to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same subject thereto shall be null and void, except for a qualified domestic relations order issued by a court of competent jurisdiction pursuant to law.

Section 5.     SITUS. The City of Washington, D.C., shall be deemed the situs of the Trust Fund created hereunder.  All questions pertaining to validity, construction and administration shall be determined in accordance with federal law or, when applicable, the laws of the District of Columbia.

Section 6.     CONSTRUCTION OF TERMS.  Whenever any words are used in this Agreement and Declaration of Trust in the masculine gender, they shall be construed as though they were also in the feminine gender or neuter in all situations where they would so apply, and wherever any words are used in this Agreement and Declaration of Trust in the singular form, they shall be construed as though they were also used in the plural form in all situations where they would so apply, and wherever any words are used in the Agreement and Declaration of Trust in the plural form, they shall be construed as though they were also used in the singular form in all situations where they would so apply.

Section 7.     CERTIFICATION OF TRUSTEES' ACTIONS.  The Co-Chairmen of the

- 24 -

Trustees may execute any certificate or document jointly on behalf of the Trustees and such execution shall be deemed execution by all the Trustees. All persons having dealings with the Pension Fund or with the Trustees shall be fully protected in reliance placed on such duly executed documents.

Section 8.     NOTIFICATION TO TRUSTEES. The address of each of the Trustees shall be that stated on the signature page of this Agreement and Declaration of Trust. Any change of address shall be effected by written notice to the Trustees.

Section 9.     SEVERABILITY. Should any provision in this Agreement and Declaration of Trust or in the Plan or Rules and Regulations adopted thereunder or in any Collective Bargaining Agreement be deemed or held to be unlawful or invalid for any reason, such fact shall not adversely affect the provisions herein and therein contained unless such illegality shall make impossible or impractical the functioning of the Trust and the Plan, and in such case the appropriate parties shall immediately adopt a new provision to take the place of the illegal or invalid provision.

Section 10.    TITLES. The title headings to the various Sections and Articles are for the purpose of convenience only and shall not have any legal significance apart from the text.

IN WITNESS THEREOF, the undersigned to hereby cause this instrument to be executed.

FOR THE INTERNATIONAL
UNION OF PAINTERS AND
ALLIED TRADES

BY: _____
      James A. Williams
      General President

FOR THE FINISHING CONTRACTORS
ASSOCIATION

BY: _____
      John Frye
      Chairman

- 25 -

36479-3

# INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND

United Unions Building, Suite 501
1750 New York Avenue, NW
Washington, DC 20006

Telephone: (202) 783-4884

## UNITED STATES TRUSTEES

James A. Williams
Co-Chairman

Alvin Levine
Co-Chairman

**Union Trustees**

**Employer Trustees**

Kenneth E. Rigmaiden
George Galis
William D. Candelori, Jr.
Robert Kucheran
Raymond J. Price, III
Raymond Sesma

Aristotle G. Aivaliotis
Joseph Brescia
Robert L. Cusumano
Richard A. Grund
Michael LeGood
Leo J. Manta
Steve Sharpe

## CANADIAN TRUSTEES

James A. Williams
Co-Chairman

Alvin Levine
Co-Chairman

**Union Trustees**

**Employer Trustees**

Robert Kucheran
William Nicholls

Adolf Gust
Richard Pazdzierski

International Painters And Allied Trades
Industry Pension Plan



Rules and Regulations
as amended and restated as of January 1, 2003



# IUPAT INDUSTRY PENSION PLAN                                    PAGE i

## TABLE OF CONTENTS

ARTICLE 1.    ESTABLISHMENT & CONSTRUCTION .................................................. 1

Section 1.01    Establishment of Plan and Name ........................................................ 1
Section 1.02    Purpose ............................................................................................... 1
Section 1.03    Trustees ............................................................................................... 1
Section 1.04    Plan Effective Date ............................................................................ 1
Section 1.05    Amendment of Plan ........................................................................... 2
Section 1.06    Prohibited Amendments .................................................................... 2
Section 1.07    Merger or Transfer of Plan Assets ................................................... 2
Section 1.08    Termination of Plan ........................................................................... 2
Section 1.09    Termination Actions .......................................................................... 3
Section 1.10    Notices ................................................................................................ 3
Section 1.11    Unauthorized Representations ........................................................... 3
Section 1.12    Construction ....................................................................................... 3
Section 1.13    Choice of Law .................................................................................... 4
Section 1.14    Severability ........................................................................................ 4

ARTICLE 2.    ADMINISTRATION .................................................................................. 4

Section 2.01    Powers Of Trustees ............................................................................ 4
Section 2.02    Duties and Powers of Plan Administrator ........................................ 5
Section 2.03    Discretion ........................................................................................... 5
Section 2.04    Consultants ......................................................................................... 5
Section 2.05    Delegation and Allocation of Responsibility .................................. 5
Section 2.06    Reliance .............................................................................................. 5
Section 2.07    Limitation of Liability ....................................................................... 5
Section 2.08    Indemnity ........................................................................................... 6

ARTICLE 3.    PARTICIPATION ...................................................................................... 6

Section 3.01    Eligible Employees ............................................................................ 6
Section 3.02    Entry Date ........................................................................................... 7
Section 3.03    Termination of Participation ............................................................. 7
Section 3.04    Reinstatement of Participation .......................................................... 7
Section 3.05    Acceptance of a New Contributing Employer ................................. 8
Section 3.06    Acceptance of A New Affiliated Employer ...................................... 8
Section 3.07    Additional Conditions ....................................................................... 9
Section 3.08    Delinquent Employers ....................................................................... 9
Section 3.09    Mergers ............................................................................................... 10

ARTICLE 4.    VESTING ..................................................................................................... 10

Section 4.01    Vested Participant .............................................................................. 10
Section 4.02    Service Vesting .................................................................................. 10
Section 4.03    Age Vesting ........................................................................................ 11
Section 4.04    Termination Vesting .......................................................................... 11
Section 4.05    Vesting Changes ................................................................................ 11
Section 4.06    Years of Vesting Service ................................................................... 11
Section 4.07    One-Year Break-in-Service ............................................................... 12
Section 4.08    Effect of One-Year Break .................................................................. 12
Section 4.09    Cure of One-Year Break .................................................................... 12
Section 4.10    Family and Medical Leave ................................................................ 13
Section 4.11    Qualified Military Service ................................................................. 13
Section 4.12    Permanent Break in Service .............................................................. 14

## IUPAT INDUSTRY PENSION PLAN                                   PAGE ii

Section 4.13    Effect of Permanent Break ........................................................................ 14

ARTICLE 5.    ACCRUED PENSION BENEFIT CALCULATION ........................... 15

Section 5.01    Accrued Benefit .................................................................................. 15
Section 5.02    Pension Benefit for Service before the Contribution Period - Qualification .......... 16
Section 5.03    Pension Benefit Credit for Service before the Contribution Period - Amount ......... 17
Section 5.05    Benefit Credit for Service during the Contribution Period .......................... 19
Section 5.06    Maximum Contribution Rates ................................................................ 19
Section 5.07    Extra Contributions ........................................................................ 20
Section 5.08    Contribution Rate .......................................................................... 20
Section 5.09    Contribution Rate Changes ................................................................. 20
Section 5.10    Benefit Break-In-Continuity .............................................................. 21
Section 5.11    New Groups ................................................................................. 22
Section 5.12    Reciprocal Pension Agreements ........................................................... 22
Section 5.13    Merger Agreements ........................................................................ 23
Section 5.14    Post-Retirement Benefit Increases ....................................................... 23

ARTICLE 6.    PENSION BENEFIT PAYMENT ........................................................ 24

Section 6.01    Normal Retirement Pension – Eligibility .................................................. 24
Section 6.02    Normal Retirement Age .................................................................... 24
Section 6.03    Normal Retirement Pension – Amount ...................................................... 24
Section 6.04    Late Retirement Pension – Eligibility ................................................... 25
Section 6.05    Late Retirement Pension – Amount ........................................................ 25
Section 6.06    Mandatory Payment of Benefits ........................................................... 25
Section 6.07    Mandatory Payment - Amount .............................................................. 26
Section 6.08    Special Early Retirement Pension - Eligibility .......................................... 27
Section 6.09    Special Early Retirement Pension - Amount ............................................... 28
Section 6.10    Early Retirement Pension —Eligibility .................................................... 28
Section 6.11    Early Retirement Pension - Amount ....................................................... 28
Section 6.12    Disability Pension — Eligibility ......................................................... 29
Section 6.13    Disability Pension - Amount .............................................................. 30
Section 6.14    Effect of Recovery by a Disabled Pensioner .............................................. 30
Section 6.15    Early Vested Pension — Eligibility ....................................................... 31
Section 6.16    Early Vested Pension - Amount ........................................................... 31
Section 6.17    Partial Pension - Eligibility ........................................................... 32
Section 6.18    Partial Pension - Amount ................................................................. 32
Section 6.19    Partial Pension – Payment Forms ......................................................... 32
Section 6.20    Non-Duplication of Pensions ............................................................. 32
Section 6.21    Taxes ..................................................................................... 33

ARTICLE 7.    STANDARD PENSION PAYMENT FORMS .......................................... 33

Section 7.01    General Payment Restrictions ............................................................ 33
Section 7.02    Commencement of Benefits Generally ...................................................... 33
Section 7.03    Married Participants - General Rules .................................................... 34
Section 7.04    Single Participants - General Rules ..................................................... 34
Section 7.05    Small Benefits ........................................................................... 34
Section 7.06    Husband-and-Wife Pension at Retirement — Standard Form of Benefit Payment
                for Married Participants ................................................................. 35
Section 7.07    Waiver of Husband-and-Wife Pension ...................................................... 35
Section 7.08    Pre-retirement Surviving Spouse Pension ................................................. 37
Section 7.09    Waiver of Pre-retirement Surviving Spouse Pension ....................................... 37
Section 7.10    Pre-retirement Surviving Spouse Pension - Spouse Alternatives ........................... 38
Section 7.11    Qualified Domestic Relations Orders ..................................................... 39

## IUPAT INDUSTRY PENSION PLAN                                    PAGE iii

Section 7.12    Qualified Domestic Relations Order Procedures ...... ...39
Section 7.13    Guaranteed Five-Year Pension (Unreduced Pension) — Standard Form of Benefit
                Payment for Unmarried Participants ......40
Section 7.14    Pre-Retirement Death Benefit - Eligibility ...... 40
Section 7.15    Post-Retirement Death Benefit — Amount ...... 41
Section 7.16    Beneficiary ...... 41
Section 7.17    Retirement and Suspension of Benefits Before Normal Retirement Age ...... 42
Section 7.18    Pensioner Reporting of Work Before Normal Retirement Age ...... 42
Section 7.19    Resumed Benefits Before Normal Retirement Age – Eligibility ...... 43
Section 7.20    Resumed Benefits Before Normal Retirement Age - Amount ...... 43
Section 7.21    Suspension of Benefits after Normal Retirement Age ...... 44
Section 7.22    Plan Disclosure of Suspension Rules ...... 45
Section 7.23    Pensioner Reporting of Work after Normal Retirement Age ...... 45
Section 7.24    Advance Determinations of Suspendible Work ...... 46
Section 7.25    Plan Notice of Suspension after Normal Retirement Age ...... 46
Section 7.26    Resumption of Benefit Payments after Normal Retirement Age – Eligibility ...... 46
Section 7.27    Resumption of Benefit Payments after Normal Retirement Age – Amount ...... 47
Section 7.28    Waiver of Suspension ...... 48
Section 7.29    Incompetence or Incapacity of a Pensioner or Beneficiary ...... 48
Section 7.30    Non-Assignment of Benefits ...... 48
Section 7.31    Payments to Minors ...... 49

ARTICLE 8.      OPTIONAL FORMS OF PENSION PAYMENT ...... 49

Section 8.01    General ...... 49
Section 8.02    Joint and Survivor Options ...... 50
Section 8.03    Social Security (Level Income) Option ...... 52
Section 8.04    Combined Level Income and Joint and Survivor Option ...... 52
Section 8.05    Ten Year Certain Option ...... 53
Section 8.06    Lump Sum Payment Option ...... 53
Section 8.07    Benefit Payment Restrictions ...... 54
Section 8.08    Trustee-to-Trustee Transfers - Rollovers ...... 58

ARTICLE 9.      CLAIMS PROCEDURE & BENEFIT PAYMENTS ...... 60

Section 9.01    Application ...... 60
Section 9.02    Partial Pension - Application Procedure ...... 60
Section 9.03    Information and Proof ...... 60
Section 9.04    Trustee Discretion and Authority ...... 60
Section 9.05    Initial Claim Determination ...... 61
Section 9.06    Request for Review ...... 61
Section 9.07    Decision on Review ...... 61
Section 9.08    Administrative Delay ...... 62
Section 9.09    No Rights to Assets ...... 62

ARTICLE 10.     FUNDING ...... 62

Section 10.01   Funding Policy ...... 62
Section 10.02   Trust for Participants ...... 62
Section 10.03   Investments ...... 62
Section 10.04   Source of Benefit Payments ...... 63
Section 10.05   Expenses ...... 63
Section 10.06   Non-Reversion ...... 63
Section 10.07   Employer Contributions ...... 63
Section 10.08   Irrevocability of Contributions ...... 63
Section 10.09   Qualified Military Service Contributions ...... 63

# IUPAT INDUSTRY PENSION PLAN

**PAGE iv**

Section 10.10  Return of Mistaken Contributions ........................................................ 64
Section 10.11  Delinquent Employers ...................................................................... 64
Section 10.12  Collection of Delinquent Contributions .................................................. 65

ARTICLE 11.    CONTRIBUTING EMPLOYER WITHDRAWAL .............................................. 66

Section 11.01  Employer Withdrawal - In General ...................................................... 66
Section 11.02  Control Group Employer - Definition ..................................................... 66
Section 11.03  Construction Industry Employers - Definition ........................................... 66
Section 11.04  Complete Withdrawal - Defined ......................................................... 66
Section 11.05  Partial Withdrawal - Defined ............................................................. 67
Section 11.06  Unfunded Vested Liability ................................................................. 67
Section 11.07  Title IV Vested Benefits .................................................................. 67
Section 11.08  Initial Unfunded Vested Liability ......................................................... 68
Section 11.09  Annual Change in Unfunded Vested Liability ............................................ 68
Section 11.10  Reallocated Liability ...................................................................... 68
Section 11.11  Mergers .................................................................................... 69
Section 11.12  Amount of Control Group Employer Liability for Complete Withdrawal ............... 69
Section 11.13  Employer Proportionate Share of Initial Unfunded Vested Liability .................... 70
Section 11.14  Employer Proportionate Share of Annual Changes in Unfunded Vested Liability ...... 70
Section 11.15  Apportionment Base Period ............................................................... 71
Section 11.16  Base Period Employer Contributions ..................................................... 71
Section 11.17  Pre-1980 Terminated Unit Contributions ................................................ 72
Section 11.18  Employer Proportionate Share of Annual Charges for Reallocated Liability .......... 72
Section 11.19  Transfers of Liability ..................................................................... 72
Section 11.20  De Minimis Reduction .................................................................... 73
Section 11.21  20-Year Payment Limitation .............................................................. 73
Section 11.22  Insolvency Reduction ..................................................................... 73
Section 11.23  Partial Withdrawal Liability - Amount ................................................... 73
Section 11.24  Payment of Withdrawal Liability ......................................................... 73
Section 11.25  Notice and Collection of Withdrawal Liability ........................................... 74
Section 11.26  Withdrawal Liability Review .............................................................. 74
Section 11.27  Withdrawal Liability Arbitration .......................................................... 75
Section 11.28  Withdrawal Liability Default .............................................................. 75
Section 11.29  Withdrawal Liability Collection Litigation ................................................ 75
Section 11.30  Withdrawal Liability Abatement – Construction Industry Employers ................... 76
Section 11.31  Withdrawal Liability Abatement – Other Employers ..................................... 76
Section 11.32  Mass Withdrawal .......................................................................... 76

ARTICLE 12.    TAX RULES AND AFFILIATED EMPLOYERS ............................................. 76

Section 12.01  Non-Discrimination ....................................................................... 76
Section 12.02  Affiliated Employer Participation ......................................................... 77
Section 12.03  Conditional Adoption ..................................................................... 77
Section 12.04  General Affiliated Employer Rules ....................................................... 77
Section 12.05  Limitation Employer ...................................................................... 78
Section 12.06  Top-Heavy Requirements ................................................................. 78
Section 12.07  Maximum Benefit Limit ................................................................... 80
Section 12.08  Defined Benefit Plan Limit ............................................................... 80
Section 12.09  Section 415 Aggregation ................................................................. 82
Section 12.10  Maximum Benefits Coordination ......................................................... 82
Section 12.11  Restricted (High-25) Employees ......................................................... 82

ARTICLE 13.    DEFINITIONS ............................................................................. 83

## IUPAT INDUSTRY PENSION PLAN                                    PAGE 63

(b) The Trustees may delegate or assign responsibility for investment (including acquisition and disposition of assets) to an Investment Manager on the written acknowledgment of the Investment Manager of its status as a fiduciary with respect to a Plan.

*Section 10.04  Source of Benefit Payments*

Plan assets will be the sole source for the payment of benefits under the Plan.  This Plan has been established on the basis of an actuarial calculation that has established, to the extent possible, that the contributions will, if continued, be sufficient to maintain the Plan on a permanent basis, and fulfill the funding requirements of ERISA.

*Section 10.05  Expenses.*

All expenses of establishing, administering and terminating the Plan and Trust with respect to the Plan will be paid from Plan assets.

*Section 10.06  Non Reversion.*

It is expressly understood that in no event shall any of the assets of the Plan revert to the employers or be subject to any claims of any kind or nature by the Employers.

*Section 10.07  Employer Contributions.*

An Employer will pay contributions to the Plan or Trust, for allocation to the Plan as directed by the Trustees, as required by law, a Collective Bargaining Agreement, a Participation Agreement or the Trust Agreement and pay interest, liquidated damages and costs of collection (including audit and attorney fees) as required by the Collective Bargaining Agreement, Participation Agreement, Trust Agreement or law

*Section 10.08  Irrevocability of Contributions*

Contributions to the Trust or Plan are irrevocable. The Employers will have no right, title or interest in contributions once paid to the Plan or Trust and no Plan assets will revert to the Employers. The Trustees may return amounts paid by an Employer due to a mistake of fact, payments conditioned on qualification of the Plan or deductibility of a payment and correct any excess contributions (as defined in IRC 4972) as provided by law.

*Section 10.09  Qualified Military Service Contributions*

(a) In accordance with applicable federal law, the Trustees may charge an Employer for contributions (without interest) with respect to Qualified Military Service after October 12, 1994 upon a timely return to work with the Employers under the Plan

(b) Absent other resolution of the Trustees, the charge will equal

IUPAT INDUSTRY PENSION PLAN                                    PAGE 64

(1)    the current contribution rate(s) for similarly-situated active Eligible Employees during the period of Qualified Military Service, multiplied by

(2)    average contributory hours for the Employee during a period, equal to the lesser of a period equal to the term of Qualified Military Service or twelve (12) months before the Qualified Military Service began.

(c)  Absent other resolution of the Trustees, the charge shall be allocated to Employers as follows.

(1)    Contributions for Qualified Military Service of less than thirty (30) days will be charged to the last Employer before Qualified Military Service began.

(2)    Contributions for longer Qualified Military Service will be charged in proportion to an Employee's Hours of Service in Covered Employment with each Employer in the twelve (12) month period before Qualified Military Service began. Contributions chargeable to an Employer which are not collectible will be reallocated as if the Employee had no Hours of Service in Covered Employment with the uncollectible Employer.

*Section 10.10  Return of Mistaken Contributions*

(a)  The Trustees may return amounts erroneously paid to the Trust as allowed by law.

(b)  A contribution or withdrawal liability payment made by reason of a mistake of fact or law, other than a mistake relating to the qualification of a Plan under IRC 401 or the exemption of the Trust from tax under IRC 501(a), may be returned within six (6) months after a determination of a mistake by the Trustees.

(c)  A contribution which is conditioned on initial qualification of a Plan may be returned within one (1) year after an adverse determination, provided an application for determination is filed by the time prescribed for filing the Employer's return for the taxable year in which the Plan was adopted.

(d)  A contribution, which is conditioned on deductibility under IRC 404, may be returned (to the extent disallowed) within one (1) year after disallowance.

*Section 10.11  Delinquent Employers*

(a)  The Trustees may terminate a person or organization as an Employer if the person or organization files to make contributions for more than 90 days after the due date. The action of the Trustees may create a Complete Withdrawal or Partial Withdrawal from the Plan by the Employer.

(b)  To once again become an Employer, the person or organization must post a bond in the amount of twice the delinquency and pay all current and delinquent contributions within three

months of the posting of the bond. If the Employer fails to do so, the bond shall be forfeited and the Employer will not be permitted to resume status as an Employer.

(c) If the Employer satisfies the foregoing conditions and once again is allowed to participate on that basis, the bond will be returned if reports and contributions remain current for a period of one year following reinstatement.

(d) The Trustees and the Union retain the right to enforce payment of delinquencies in accordance with other provisions of this Plan, the Trust Agreement, the applicable Collective Bargaining Agreement or Participation Agreement and applicable law.

*Section 10.12  Collection of Delinquent Contributions*

(a) In the case of a Contributing Employer that fails to make the contributions to the Plan for which it is obligated, in accordance with the terms and conditions of a collective bargaining agreement, the Trustees may bring an action on behalf of the Plan pursuant to ERISA 502(g)(2) to enforce the Contributing Employer's obligation.

(b) In any such action in which judgment is awarded in favor of the Plan, the Contributing Employer shall pay to the Plan, in accordance with the court's award:

    (1)    the unpaid contributions,

    (2)    interest on the unpaid contributions, determined at the rate for underpayment of federal income taxes under IRC 6621

    (3)    liquidated damages equal to the greater of

        (A)    the amount of interest charged on the unpaid contributions, or

        (B)    20 percent of the unpaid contributions,

    (4)    reasonable attorneys' fees and costs of the action, and

    (5)    such other legal or equitable relief as the court deems appropriate.

(c) Nothing in this section shall be construed as a waiver or limitation on the rights or ability of the Plan, Trustees or Union to enforce a Contributing Employer's contribution obligation in any other type of proceeding.

AMENDMENT TO THE
# INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION PLAN
(as restated effective January 1, 1999)

Major Topic:              Title to Plan Assets

General Effective Date:      January 1, 2004

The undersigned, pursuant to authorization of the Trustees of the International Painters and Allied Trades Industry Pension Fund, approve and ratify the following changes to the International Painters and Allied Trades Industry Pension Plan, as amended and restated as of January 1, 1999 and amended to date, ("Plan") and amend the Plan accordingly as set forth herein.

WHEREAS, the Trustees desire to amend the Plan to clarify that assets of the Plan or Trust include contributions that are due and payable by Employers as well as contributions that have been paid to the Plan or Trust, and

WHEREAS, the full board of Trustees has authorized the Co-Chairman to execute an amendment to reflect discussion and changes approved by the full board.

THEREFORE, the Plan shall be amended, effective on or after January 1, 2004 unless otherwise provided by the amendment or applicable law, in the following manner.

1.      Amend *Section 10.08 (Irrevocability of Contributions)* to read as follows (amended language is in bold italics):

> Contributions *by Employers* to the Trust or Plan *are plan assets and* are irrevocable. The Employers will have no right, title or interest in contributions once paid to the Plan or Trust *or in contributions owed to the Trust or Plan in accordance with a collective bargaining agreement, the Trust Agreement, a Participation Agreement or applicable law but not yet paid* and no Plan assets will revert to the Employers. The Trustees may return amounts paid by an Employer due to a mistake of fact, payments conditioned on qualification of the Plan or deductibility of a payment and correct any excess contributions (as defined in IRC

4972) as provided by law.

Witness our signatures, pursuant to authority granted by the full Board of Trustees, to memorialize our action and the prior resolutions of the Trustees to amend and restate the Plan.

EMPLOYER TRUSTEES

By: _____
Ralph A. Trallo, Co-Chair

Date: _October 14_, 2003

UNION TRUSTEES

By: _____
James A. Williams, Co-Chair

Date: _October 19_, 2003

122882-1

2